# THE STATE v. EVERETT BOBBITT and JOSEPH STEWART, Appellants.

### Division Two, May 26, 1910.

1. **ARSON: Attempt: Question for Jury.** Where under the evidence the offense may have been either completed arson or an attempt to commit arson, the question is for the jury to settle. And, where there was testimony that defendants or their co-conspirators put coal oil in a sack and attached the sack to a pole and set the sack afire and stood the pole against the eaves of the house, and the occupants later knocked down the pole, leaving the sack on the roof, and after it was removed a small circle was found burned in the roof, which might have been caused by the sack remaining there, and the court gave to the jury instructions on both the completed offense and attempted arson, and they found that the offense was attempted arson, the Supreme Court will not interfere with their finding, there being evidence from which they might have properly inferred that the offense was only an attempt.

2. **CONSPIRACY: Prior Threats.** Everything done or said by the parties to a conspiracy relating to its purposes, during its existence, is admissible in evidence against all or either of the conspirators, whether said or done in the presence of each or not. And where a witness testified that threats were made by one of the conspirators, who was not included in the indictment, about the time the conspiracy was formed, and afterwards, on cross-examination, he placed the threats at a time preceding the formation of the conspiracy, it was defendant's duty to move to strike out this testimony, but having failed to do so, and the court having instructed the jury not to consider any declarations made before the conspiracy was formed, no prejudicial error was committed in admitting these threats in evidence.

3. ———: **Guilt of Those Not Indicted: Credibility as Witnesses: Instructions.** Two of the conspirators, who were not included in the indictment, testified for the State, and each testified to his own guilt, and the court in one instruction told the jury that it was not in their province to consider the guilt of said witnesses except for the purpose of determining their credibility, but that the only question for them to determine was the guilt or innocence of the defendants; and in another instruction submitted to the jury the question of whether these

State v. Bobbitt.

witnesses entered into a conspiracy with the defendants to set fire to the house, and instructed them that, if they so found, the act of one of said conspirators, in the prosecution of said conspiracy, and while acting in concert with the others, would render each guilty. *Held*, that the first instruction, though perhaps unhappily expressed, is not so inconsistent with the other as to constitute reversible error.

4. ———: **Conspiracy: Alibi: Presence.** The defendants, where the conspiracy to burn the house is established, are not entitled to an instruction to the effect that if the evidence raises a reasonable doubt of their presence at the time and place of the attempted arson, they should be acquitted. If the conspiracy was formed, and the attempt was made in pursuance thereof by one of the conspirators to burn the house, acting in concert with the others, the defendants are guilty whether they were actually present or not.

5. ———: ———: ———: ———: **Request for Proper Instruction.** But such an instruction should be held to be a request for a proper instruction on the question of *alibi*, namely, the defendants claiming there was in fact no conspiracy, and the testimony offered tending to show they were not present at the time the attempt was made to burn the house, the jury should have been told that if they found there was no conspiracy, and they had a reasonable doubt of the presence of defendants at the time and place of the attempted arson, they should acquit them; and the failure of the court to give such an instruction was reversible error. If the conspiracy was clearly established, their actual presence was not essential to their guilt; on the other hand, if the conspiracy was not established, their actual presence and participation in the offense were essential.

6. ———: **Former Acquittal: Plea in Abatement: Demurrer.** A former acquittal of a defendant tried as a co-conspirator in a murder is no bar to his subsequent trial for an attempted arson growing out of the same conspiracy, of which the murder of the householder and the burning of his house formed a part; and a demurrer, filed by the State, is the proper way to reach the plea in abatement alleging such former acquittal, where it shows on its face that in the former case defendant was not tried or acquitted of the offense of attempted arson.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond,* Judge.

REVERSED AND REMANDED.

*W. H. Rothwell, S. C. Major* and *O. S. Barton* for appellants.

(1)    The trial court committed error in sustaining the demurrer on the part of the State to the plea in bar of former acquittal of the defendant Stewart. While the indictment in the first case charged murder in the first degree in the ordinary way, *viz.*, as a willful, deliberate, and premeditated killing, the proof of the arson was admitted and the court in that case instructed the jury that the proof of the arson took place of the proof that would otherwise have been required to show a willful, deliberate and premeditated killing. When one offense is a necessary element in, and constitutes an essential part of, another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to the prosecution for the other. State v. Anderson, 186 Mo. 25; State v. Fink, 186 Mo. 50; State v. Huffman, 136 Mo. 62; Hershfield v. State, 11 Tex. App. 207; State v. Roberts, 14 Ga. 8. Where one crime is a mere incident of another, conviction of the greater will bar a prosecution for the less. State v. Roberts, 14 Ga. 8; Neilson Petitioner, 131 W. S. 176; Triplett v. Commonwealth, 44 Ky. 193; State v. Cooper, 1 Green (N. J.) 361; Regina v. Gould, 9 Car. and P. 364; R. S. 1899, sec. 1815.    (2)    The court committed error in permitting the prosecution over the objection of the defendants, to introduce threats made by Enoch Bobbitt, the father of the defendant Everett Bobbitt. Evidence of threats by one of the conspirators, made before the existence of the conspiracy, is not competent against the others. State v. Weaver, 165 Mo. 1; State v. May, 142 Mo. 135; State v. Kennedy, 177 Mo. 98. It is only after a conspiracy has been shown to exist that acts or declarations of one of the parties are considered as the acts of all. State v. Weaver, 165 Mo. 1; State v. Daubert, 42 Mo. 233; State v. Melrose, 98 Mo. 594; State v. Menton, 116 Mo. 605; State v. Frederick, 85 Mo. 149; State v. Walker, 98 Mo. 95; State v.

Hicks, 129 Mo. 99; State v. Crabtree, 111 Mo. 139. The admission of improper evidence in a criminal case is not cured by an instruction for its exclusion. State v. Thomas, 99 Mo. 235.  (3)  The trial court committed error in permitting the witness Rollie D. Kivett to testify as to the statement that Robert Goodwin made in regard to the pistol Kivett had, as the evidence of Kivett is that this statement was made the next day after the killing and the object of the conspiracy had been accomplished.  In answer to the question as to what had become of the pistol he had that night, he stated that Robert Goodwin told him that he had taken the pistol out of Kivett's pocket and put it in the flour chest.  Nothing said or done by a conspirator after the object of the conspiracy has been accomplished is competent.  State v. Duncan, 64 Mo. 262; State v. Levy, 90 Mo. App. 643; State v. Davis, 80 Mo. App. 239; State v. Levy, 168 Mo. 521.  (4)  The evidence shows that there was a burning, that the shingles on the roof were burned and a hole burned in the roof; then the crime of arson had been completed.  Though there must be an actual burning to constitute the offense, it is not necessary that the building should be wholly consumed or even materially injured.  If any part, however small, is consumed, it is sufficient.  2 Am. and Eng. Ency. Law (2 Ed.), p. 923; Bishop on Crim. Law (3 Ed.), sec. 325.  A person cannot be convicted of an attempt to commit a crime, if the crime was actually committed.  R. S. 1899, sec. 2361; State v. White, 35 Mo. 500; State v. Scott, 172 Mo. 543; State v. McCaffery, 225 Mo. 617; State v. Bell, 194 Mo. 266; State v. Harris, 100 Mo. 724; State v. Clark, 221 Mo. 301.  (5)  The court, after telling the jury that they must find that a conspiracy existed between these defendants and Kivett and Peacher, then tells them not to take into consideration the guilt or innocence of Kivett or Peacher.  These instructions are utterly inconsistent.  If the defense was an alibi, and the de-

fendant testified that he was not present at the commission of the crime, and the court is asked to instruct on alibi, a failure to give an instruction on the theory of the case is reversible error. State v. Koplan, 167 Mo. 298.

*Elliott W. Major*, Attorney-General, and *James T. Blair*, Assistant Attorney-General, for the State; *Paul P. Prosser* and *A. W. Walker* of counsel.

(1) Appellants were found guilty of an attempt to commit arson. This offense is embraced within that charged in the information. State v. Frank, 103 Mo. 122; Benbow v. State, 128 Ala. 4. (2) The defendant Stewart contends that his former acquittal on the charge of murder is a bar to his prosecution for the offense of arson under the present information. The statute is a complete answer to this contention. R. S. 1899, sec. 2371. Stewart could not have been legally convicted of arson or of an attempt to commit arson under the former information. State v. Oakes, 202 Mo. 86; State v. Martin, 76 Mo. 337. (3) Acts and declarations of a co-conspirator may be admitted before proving the conspiracy, provided proof of the conspiracy is afterward made. The order of such testimony lies within the discretion of the trial court. State v. Miller, 191 Mo. 608. (4) The instructions on attempt to commit arson were clearly warranted by the evidence. The evidence does not show conclusively that the setting fire to the house was the act of these defendants, but leaves open the question whether such was their act or the inadvertent act of Mrs. Smith in knocking down the "pole of fire" despite the warning of her husband. (5) Counsel for defendants criticise the instruction which tells the jury that it is not within their province to consider the guilt of Kivett or Peacher, except for the purpose of determining their credibility as witnesses. They say the entire case was tried by the State on the theory that there was a conspiracy. In-

structions 1 and 3 submitted to the jury that the defendants were present and actively participating in the offense, and the theory that they were present as aiders and abettors. The evidence. of Kivett and Peacher tended to prove these theories, as well as the existence of a conspiracy. The defendants themselves testified that they were not present at the commission of the offense. The court properly submitted all three theories to the jury. The criticised instruction says nothing about the innocence of Kivett and Peacher, as intimated. It was not within the province of the jury to assess any punishment against Kivett and Peacher, and the instruction was entirely proper. When taken in connection with instructions 1, 2, 3, 4 and 7, it could not have misled the jury in any way. (6) Defendants' instruction as to alibi was properly refused since appellants' presence at Smith's house was not necessary in order to warrant their conviction. The evidence abundantly established a conspiracy. Hence an instruction on alibi would have been erroneous and would have misled the jury. R. S. 1899, sec. 2364; State v. Gatlin, 170 Mo. 369.

GANTT, P. J.—This is a prosecution commenced on the 30th day of January, 1908, by the prosecuting attorney of Howard county, by filing in the circuit court of said county an information duly verified, charging that the defendants ''did unlawfully, maliciously and feloniously set fire to the dwelling house of Franklin Smith, then and there situate, in which dwelling house was then and there a human being.'' Defendants applied for and were granted a change of venue to Boone county. Afterwards in the circuit court of Boone county the defendants were duly arraigned and pleaded not guilty. The defendant Stewart filed a plea of former acquittal, to which the prosecuting attorney demurred and the demurrer was sustained.

228 Sup—17

A jury was then impaneled and the defendants were put upon their joint trial, which resulted in a verdict of guilty of attempting to set fire to the dwelling house of Franklin Smith and the punishment of each was fixed at two years in the penitentiary. Motions for new trial and in arrest were filed overruled and the defendants sentenced in accordance with the verdict, and from that sentence they have appealed to this court.

The State's evidence tended to show that prior to the commission of the offense of which defendants were convicted, Enoch Bobbitt, the father of the defendant Everett Bobbitt, had become involved in a litigation with one Franklin Smith over the possession of a tract of land belonging to Enoch on which Smith was living. The evidence tended to show that Enoch Bobbitt had made numerous threats with reference to the means he would use to get Smith off of his premises, and that in the execution of these threats he enlisted, through his son-in-law Robert Goodwin, the services of Rollie Kivett, Noble Peacher, Everett Bobbitt, his son, Robert Goodwin and Joe Stewart. Stewart was working for Everett Bobbitt at the time. According to the testimony of Kivett and Peacher, on the night of March 19, 1907, the above named parties met at the home of Robert Goodwin; after spending the evening in playing cards and drinking whisky, the party adjourned to the porch to complete their arrangements for burning Smith's house. A jug of oil procured on the preceding day was at hand, and this, together with a tin bucket, two sacks, some waste, two revolvers and a bottle of whisky, constituted the materials selected for the end in view. The testimony then tends to show that Kivett, Peacher and the two defendants herein, Joe Stewart and Everett Bobbitt, left Goodwin's house at about eleven o'clock that night and went directly to the home of Franklin Smith and arrived there about an hour and a half later. They

then poured the oil into a bucket and placed one of the sacks therein, and then attached the sack to a pole which the defendant Everett Bobbitt had cut on the way over there. The waste also was saturated with the oil and fastened to the pole. Peacher was then sent to the barn for the purpose of attracting Smith's dog from the real scene of operations. Those remaining after Peacher had left, then laid the sack on the pole and put it upon the porch of the new kitchen and struck a match and lighted the waste on the pole and also the sack which had been saturated with oil. While this was going on on the outside, it appears that Franklin Smith and his wife and Vaughn Smith their son, a young man, and H. C. Sartain were in the house and had retired for the night; there were also six children in the house at the time.

Mrs. Smith testified that they stayed up that night until about half past twelve, when they all retired to bed. Vaughn Smith and Mr. Sartain slept upstairs in one room and her daughters in another room. She and her husband had been in bed but a few minutes when she saw a light—just a flash; she thought it was a lantern; she saw its light out of the window on the east side, and she thought probably Mr. Sartain had gone to see about his horse, but it was only a minute or so until a bright light was flashed and she jumped. The kitchen door was to her right hand and when she got out of bed she jerked it open and exclaimed "Oh Lord, Frank, the house is afire!" Whereupon Smith jumped out of bed without his pistol, then came back and got his pistol and came on out. When they got to the outside kitchen door she unlocked it for him; she went ahead of him and he passed some little distance and she was trying to knock the pole of fire down when he turned and looked back and said, "Do not knock that pole down." Just as he said that the first shot was fired and he looked back over his shoulder and said, "They have shot me," and that was the last word

he said to her. Her son came out then and put the ladder out on top of the porch. They handed him up water and put the fire out and carried Mr. Smith into the house, where he lived about five minutes. After that she testified she saw the roof and they found then this old waste that they had knocked down; there was a place burned, a burned hole, burned into the shingles of the roof. On cross-examination she stated that this pole was standing over the edge of the eaves of the porch. That she knocked the pole down; that her husband called out to her not to do that before she knocked it down; that she only saw one man in the party that night and she could not recognize him.

Vaughn Smith testified that he heard his mother when she called fire and he rushed out. As he went out of the hall door he heard two shots fired, and before he could get down stairs she said that his father was shot. He rushed out to where he was and his father handed him his revolver and said, "Be careful with it, it is cocked." He picked his father up and carried him about half way to the house and he asked him to lay him down; he told him that the men went off in a southwest direction from the house. The witness then went up the ladder and put the fire out. He made an examination of the roof where this fire had been. There was a sack lying there and some waste. The pole was not up against the porch when he got there. The fire had burned into the shingles of the roof and the pole had been knocked down before he got there. The sack had the letter "B" on it.

Mr. Sartain testified that he was aroused after he had gone to sleep that night by the screams of a woman, and in a few minutes he heard a couple of shots. He went down stairs just as they were bringing Frank Smith into the room and he went to take care of him and was not out of doors at all that night. The next morning he examined the roof but did not find anything on it; the sack had been taken off. He found

the burned place about as big around as a circle which he indicated with his two hands.

Kivett testified that Everett Bobbitt and Joe Stewart saturated a sack with coal oil in that bucket, and he, the witness, took a piece of waste and tied it on the pole and saturated that with coal oil. ''We sent Peacher around toward the barn to draw the dog's attention, to keep him from watching us. Joe Stewart and Everett and myself went on up in the yard and on the porch of the old kitchen. We laid the sack on the pole and then put it upon the porch of the new kitchen, then we struck a match to the waste on the pole and touched the sack off with that.'' He testified that he helped to put this stuff on the end of the pole; that he put the waste there; that he had brought the waste in his pocket. It appeared that Peacher had been arrested for this offense and pleaded guilty to attempted arson. Kivett had never been arrested or tried for any part in the affair. It also appeared that the defendant Joseph Stewart was arrested and tried on a charge of murder in the first degree for killing Franklin Smith, and was acquitted by the jury in Howard county.

The defendants testified in their own behalf that they were not at Smith's house that night, and knew nothing of any conspiracy; that they were at the house of Robert Goodwin at ten o'clock that night, when they left and went directly to the house of Everett Bobbitt, arriving there at 11:15, and remaining in bed until they were called by someone over the telephone, telling them that Franklin Smith had been killed. Their statement as to when they left Goodwin's house was corroborated by Robert Goodwin and his wife, and their statement as to when they arrived at Everett Bobbitt's house was corroborated by Everett Bobbitt's wife, and his mother Mrs. J. E. Bobbitt.

The giving and refusing of the instructions will be considered in the course of the opinion.

I.   Learned counsel for the defendants have urged both in oral argument and in brief that there is no evidence tending to show an *attempt* to commit arson and hence the verdict cannot stand.   Their contention is that the evidence establishes, if anything, a completed offense of arson and that therefore the statute, section 2361, Revised Statutes 1899, which provides that ''no person shall be convicted of an assault with an intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended or the offense attempted was perpetrated by such person at the time of such assault or in pursuance of such attempt,'' requires a reversal of the judgment on this ground, if no other.

In State v. McCaffery, 225 Mo. 617, we had occasion to consider the effect of section 2361, Revised Statutes 1899.   In that case the evidence was conclusive that the building was set on fire by somebody, and when the firemen arrived the whole downstairs back of the bar was afire, and after the fire was extinguished rags and burlap saturated with coal oil and partially burned were found immediately under a large hole made in the floor of the saloon by the fire.   There was no evidence tending to show that anyone except the defendant and his companion in that case had anything to do with the offense, and there was strong evidence tending to show that the defendant himself was the perpetrator of the offense, and we held that there was a completed offense of arson and that the verdict in the case, for attempted arson, was unsupported by the testimony, and that there should have been no instruction on attempted arson.   Counsel for the defendants invoke the decision in that case in support of their contention here that this was a completed offense and that the court erroneously instructed for the attempted arson, whereas the State insists that it was a question for the jury under the testimony in this case whether the defendants attempted to set the

building on fire and failed to do so because interrupted before they had succeeded in their design, and that the actual communication of the fire to the building was the result of the act of Mrs. Smith in knocking down the pole to which the sack and waste were attached, which communicated the fire to the roof of the building. A careful examination of the record will show that there was no testimony that the roof was burning or had been ignited to any degree at the time that the parties who placed the burning sack on the pole above the roof, left the place, and there is no evidence that the defendants or their accomplices placed the burning sack and waste in direct contact with the roof. There is testimony that Mrs. Smith did knock the pole down, notwithstanding her husband's injunction not to do so, and that when the pole fell it left the burning sack and waste on the roof and that Vaughn Smith secured a ladder and knocked the burning sack and waste off of the roof and extinguished the fire, which had burned only a small hole in the shingles on the roof of the kitchen. The testimony indicated that the pole was leaning up against the eaves of the house, the upper end of it "sticking over above the roof." The exclamation of Mrs. Smith to her husband that the house was afire was made before she had any opportunity to see whether the roof had actually caught or not. This is evident from the fact that she had not even left the house and it was simply an assumption on her part based upon the light from the burning sack. The testimony of Kivett was to the effect that he and the defendants "laid the sack on the pole and then put it upon the porch of the new kitchen; that the pole was standing over the edge of the eaves." Kivett testified that they put this stuff on the end of the pole.

Section 2360, Revised Statutes 1899, provides: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall

fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof shall be punished," etc.   This court in State v. Montgomery, 63 Mo. l. c. 298, defined an attempt in these words: "An attempt is a deliberate crime which is begun, but through circumstances independent of the will, the action is left unfinished.   It is such an intentional, preliminary, guilty act as will apparently result, in the usual course of natural events, if not hindered by causes outside of the actor's will, in a deliberate crime.   [2 Wharton's Crim. Law (7 Ed.), sec. 2686.]   If the means are apparently adapted to the end, and there is an apparent physical ability to complete the attempt on the part of the attempter, then the case may be fairly made out."   In addition to the evidence already noted, it appears that counsel for the defendants in the cross-examination of Mrs. Smith, asked her this question: "This pole was sitting over the edge of the eave?"   Ans.   "Yes, sir, it was at the end of the porch.   Here is where the water all ran off of the porch and it was set up this way (indicating)."   And in her direct examination she testified she "was trying to knock the pole of fire down."   The court instructed the jury for both a completed arson and an attempted arson, and the sole question at this time is whether the court was justified in instructing the jury on an attempt, at all, on the ground that all the evidence shows that it was a completed offense of arson.

After a careful consideration of this testimony, in our opinion there was evidence from which the jury might properly have drawn the conclusion that the defendants had fixed the sack on the pole and set the pole up by the house projecting over the roof and that at the time Mrs. Smith appeared on the scene the fire had not yet been communicated to the roof, but that her act in knocking the pole down, dropped the burning sack upon the roof and in this way the

fire was communicated to the shingles. The jury had the benefit of the physical description which Mrs. Smith gave of the manner in which the pole was set up, but that description is not contained in the bill of exceptions further than to say she had indicated how the pole was set; that the fire would have been communicated eventually to the roof had Mr. and Mrs. Smith not so promptly appeared upon the scene and prevented it is probably true, but after all it was a question of fact for the jury to determine whether anything more than an attempt to commit arson was perpetrated, and hence this assignment must be ruled against the defendants. We think that the facts of this case distinguish it from those in State v. McCaffery, supra.

II. It is insisted that the court erred in permitting the prosecution to introduce threats made by Enoch Bobbitt. The objection to these threats is that they were made before there was any evidence that there was any conspiracy between the elder Bobbitt and these defendants. The testimony of three witnesses, to-wit, W. M. Bodle, T. G. Miller and Richard Wills, is included in this assignment. Thus Bodle testified that on the third Saturday in February, 1907, he heard Enoch Bobbitt say that if he could not get Smith off of the farm without a lawsuit, he would drag him off. Miller testified that just a few days before Mr. Smith was killed, Enoch told him that he would get Smith out of the premises if he had to get him out with a pair of mules. Now as against the defendant Everett Bobbitt, these threats were clearly competent, as the evidence tended to show his complicity in the conspiracy as early as the 16th of February, 1907. The objections as to the testimony of these witnesses were not made separately as to the separate defendants. As to the testimony of Richard Wills, he testified that he heard threats made by Enoch the latter part of February, 1907. It is true that later on in his testi-

mony he said this was one time there at Lisbon, he did not remember what night it was, and in answer to a question afterwards he said it was a couple of months, he thought, before Smith was killed. Clearly the evidence he gave in the first instance was admissible, and if counsel thought that the last statement carried it back of the alleged conspiracy they should have taken some steps to have had this testimony stricken out, or at least have saved an exception to it, as it was clearly competent on its face when it was admitted. We do not think there is any error, however, in the admission of this testimony. While the evidence tended to show that Everett Bobbitt had entered into the conspiracy prior to the 16th of February, 1907, the exact time at which the conspiracy was formed was not definitely settled and it was for the jury under the whole evidence to determine that matter. Of course it is the settled law that everything done and said by the parties to a conspiracy with respect to the purposes of it during the existence of the conspiracy is admissible in evidence against all or either of the said parties, whether said in the presence of each one or not. [State v. Darling, 199 Mo. l. c. 201; State v. Copeman, 186 Mo. l. c. 120.] Nor did it make any difference that Enoch Bobbitt was not included in the indictment in this case against these defendants. [State v. Kennedy, 177 Mo. 98; State v. Boatright, 182 Mo. 33; State v. Sykes, 191 Mo. l. c. 78.] Counsel for the defendant having failed to strike out the testimony of the witness Wills after he had modified it, on cross-examination, as to the time, the trial court instructed the jury emphatically not to consider any declarations made before the conspiracy was formed, and as there was ample testimony of similar threats made by Enoch, in our opinion the testimony of Wills did not have and could not have had any material effect upon the verdict.

III.    Error is predicated upon the action of the

court in permitting the witness Kivett to testify as
to the statement of Robert Goodwin made the next day
after the killing of Smith in regard to the pistol Kivett
had. No objection was made to this testimony as hear-
say. The answer of the defendant did not tend to
incriminate either of these defendants; it was simply
to the effect that Goodwin told him the next morning
that he had put the pistol in the flour chest. It is dif-
ficult to conceive how this evidence was prejudicial to
the defendants in this case. Certainly in our opinion
it does not constitute reversible error, though it might
well have been omitted.

IV. *As to the instructions.* Defendants assert
there was absolutely no testimony upon which to base
instruction number three given by the court, submitting
to the jury whether defendants were guilty of an
*attempt* to commit arson, because the completed crime
of arson was committed. We have already ruled ad-
versely to this contention in the consideration of the
sufficiency of the testimony to sustain the verdict of
guilty of an attempt to perpetrate the offense. There
was no error in submitting this view of the evidence to
the jury.

V. Instruction number eight given by the court
was in the words following: "The court instructs the
jury that the only question for you to decide is the
guilt or innocence of the defendants Everett Bobbitt
and Joe Stewart and that it is not within your province
to consider the guilt of Rollie D. Kivett or Noble
Peacher except for the purpose of determining their
credibility as witnesses in this case."

Defendants assail this instruction as utterly in-
consistent with the other instructions, notably number
two, which submitted to the jury whether Kivett and
Peacher entered into a conspiracy with these defend-
ants to set fire to the house of Franklin Smith, and if
they so found, then the act of one of said conspirators
in prosecution of said conspiracy and while acting in

concert with the others, would render such others guilty, though they were not personally present at the burning of said house. In other words, counsel urge that the second instruction is predicated upon the theory that, in order to find defendants guilty, the jury must find a conspiracy existed between them and Kivett and Peacher, which necessarily required them to find Kivett and Peacher also guilty, and yet in this instruction the court tells them they have nothing to do with the guilt of Kivett and Peacher, except for the purpose of determining their credibility as witnesses in the case.

The instruction is perhaps unhappily expressed, but after all it meant no more than that the jury were to pass upon the guilt or innocence of defendants in this trial, which was the fact, as they alone were on trial, but they could consider the guilt of Kivett and Peacher as affecting their credibility, and this also was correct. That they were guilty there was no doubt, as each testified to his own guilt, but they were not on trial, and the jury could not punish them, although they could weigh their evidence in the light of their confessed complicity in the crime.

VI. It is earnestly insisted by counsel for the defendants that the circuit court erred in refusing to give an instruction on *alibi* which defendants attempted to establish by their testimony. This instruction was in the usual form and in substance told the jury that if the evidence raised a reasonable doubt in their minds as to the presence of the defendants at the time and place where the crime was charged to have been committed, they would acquit the defendants. The court in its fourth instruction had already instructed the jury that if they believed from the evidence that the defendants Everett Bobbitt and Joe Stewart entered into a conspiracy, agreement and common design with Rollie D. Kivett, Noble Peacher, Robert Goodwin and J. E. Bobbitt or any of them to

set fire to the dwelling house of Franklin Smith, and that afterwards one or more such persons who had entered into such conspiracy and agreement did, in prosecution thereof and according to said common design and while acting in concert with the defendants Everett Bobbitt and Joe Stewart, at any time within three years prior to the 30th of January, 1908, at Howard county, unlawfully, maliciously and feloniously attempt to set fire to the dwelling house of said Franklin Smith, and in such attempt did any act towards the commission of said offense, but were either prevented from executing said offense or failed in the perpetration thereof, and that there was in said dwelling house at the time a human being, although they might believe that the defendants were not present at the time of such attempt, they should find the defendants guilty and assess their punishment in the penitentiary for a term of not less than two years. By comparison of the two instructions it will be seen that they are contradictory of each other. Under the refused instructions, all that the defendants would have been required to do to create in the minds of the jury, in order to have been acquitted, was a reasonable doubt as to their presence at the house of Franklin Smith at the time the attempt was made to set fire to it. Whereas under the law of conspiracy, as given to the jury by the court, their personal presence was not necessary if they had previously entered into the conspiracy to burn the said house and thereafter one of the said conspirators therein, other than the defendants, had, in the prosecution of the said common design, attempted to set fire to the said house and had done any act towards the commission of such offense, the defendants were guilty notwithstanding the jury might believe they were not actually present at the time of such attempt. If the defendants were co-conspirators with Kivett and Peacher and the elder Bobbitt and Goodwin, as maintained by the State, and

remained such until after the crime was committed, their absence from the scene of the arson or attempted arson on the night it was perpetrated would not have entitled them to an acquittal, and yet this is what the instruction on *alibi* as prayed by the defendants stated to the jury. In a criminal prosecution the State assumes and is required to show, as an essential element in the defendant's guilt, the presence of the defendant at the commission of the crime. This being true, a simple plea of not guilty without other further plea puts the State to the proof of his presence at the time and place where the crime was committed. If the State fails to show that the defendants were present when the crime was committed, *when without his presence* it is impossible for him to be guilty, the prosecution must fail. But it is to be noted that this statement of the law contains within itself the exception that *if the crime can be committed, as it unquestionably can in a case of conspiracy, without his presence, it is not impossible for him to be guilty though not actually* present at the time and place of the commission of the crime. The doctrine of the defense of *alibi* is founded upon the law of nature that the same body or person cannot occupy two inconsistent positions at one and the same time. Thus the defendant cannot at the time alleged have been committing a crime in St. Louis which requires his immediate presence to make him guilty thereof, if at the same time he were in Kansas City. In other words, his innocence is demonstrated by proving a fact which renders it impossible for him to have been guilty, but it is obvious that the mere proof of his presence at a place other than the place of the crime will not demonstrate his innocence if there is proof that, though absent at the time, he was one of a band of conspirators acting in concert to commit the offense, and one of his co-conspirators does commit the offense in his absence. In State v. Gatlin, 170 Mo. 369, 370, which was a case of murder and a

charge of conspiracy, the defendants requested an instruction on *alibi,* and Judge SHERWOOD, speaking for this court, said, in regard to the denial of said instruction: "Besides, inasmuch as a conspiracy on the part of the defendant and Crite, at least, to kill Graham, was so abundantly established, it made no difference whether defendant was present or absent when the murder was committed, and so an instruction on *alibi* would have misled the jury."

That this instruction in this case as requested by the defendants, should not have been given in the form in which it was asked, we have no doubt whatever, but the serious question presented is that, regarding this instruction as a prayer for a proper instruction on *alibi* (State v. Fox, 148 Mo. 527), should not the court, in view of the claim made by the defendants that there was in fact no conspiracy and that the testimony offered in their behalf tended to show that they were not present at the time the attempt was made to burn the house, in addition to directing the jury that if they found and believed from the evidence that there was a conspiracy on the part of the defendants and the other parties named, or some of them, to burn the house, they might find the defendants guilty, even though they were not present at the time of such attempt, have given a proper instruction that if they found there was no conspiracy, and they had a reasonable doubt as to whether the defendants were present at the time and place of the commission of the crime, they should give the defendants the benefit of such doubt and find them not guilty? We are clear that it should. The necessity for instructing on the evidence tending to prove an *alibi* grows out of the two theories on which the case was submitted to the jury by the court on the part of the State: one, that the evidence tended to show the actual presence and participation of the defendants in the attempt to burn the said house, and the other, a conspiracy, in which their

presence was not essential. We are unable in this case to say as was said in Gatlin's case that the evidence is so overwhelming that the conspiracy can be assumed and no instruction on *alibi* was necessary.

VII. There was no error in refusing the instruction indicated by the letter "I" as requested by the defendants. The court had fully covered the proposition of law as to the manner of weighing the testimony of the accomplices in its instruction number seven.

The defendants' refused instruction "K" was fully covered by the court's instruction number six.

As to instruction "L," requested by defendants, what has already been said on the subject of *alibi* demonstrates that it would have been error to have given it, unmodified and unexplained.

Instruction "J" prayed by defendants was properly refused. Instruction number nine given for the State fully covered the declarations and statements of the alleged conspirators and when such statements and acts would bind each other.

We have considered all the alleged errors which are urged by both defendants. It remains now to consider the propriety of sustaining a demurrer to the plea in abatement filed by the defendant Stewart. In substance the plea averred that this defendant had been tried on an information for the murder of Franklin Smith on the 19th day of March, 1907, and acquitted on said charge; that in said murder case the State prosecuted him on the theory that he was guilty of murder in the first degree for killing said Smith while burning or attempting to burn his house; that the house that he is now charged with burning is the same house that the State's witnesses testified he was burning at the time he shot and killed Smith; that the arson offered in evidence in said murder trial was a necessary ingredient of the said murder. The State demurred and the court sustained the demurrer to said plea. We think it is clear that the court properly held

that acquittal of the murder charge is no bar to this prosecution for arson. The plea on its face shows the defendant was not indicted or tried for the offense of arson and a demurrer was the proper way to reach it. [State v. Williams, 152 Mo. 121; State v. Laughlin, 180 Mo. 358, .359.]

As the judgment must be reversed and the cause remanded for failure to give a correct instruction on *alibi*, we refrain from any expression on the merits of the case further than to say the evidence tended to establish a case for the opinion of a jury.

Judgment reversed and cause remanded to be tried in accordance with the views herein expressed. All concur.