**STATE of Missouri, Respondent,**

v.

**Herbert SLAY, Appellant.**

**No. 51671.**

Supreme Court of Missouri,
Division No. 2.

Oct. 10, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Stanley D. Rostov, Special Asst. Atty. Gen., Kansas City, for respondent.

John D. Hasler, Robert J. O'Hanlon, St. Louis, for appellant.

EAGER, Presiding Judge.

Defendant was found guilty by a jury of tampering with a motor vehicle by removing the front bumper and hood without permission of the owner. Section 560.175, RSMo 1959, V.A.M.S. By an information substituted for the original indictment he was also charged with a prior conviction in the State of Mississippi for having received

stolen property, and with imprisonment therefor. The trial court found from evidence offered that defendant had been so convicted and imprisoned, and it assessed his punishment at a term of five years. He was so sentenced after a timely motion for new trial was overruled.

Some of the points raised involve the evidence to such an extent that we are required to make a rather detailed recital. From the State's evidence the following facts reasonably appeared. One John Nicoll of Elmhurst, Illinois, owned a 1964 white Chrysler hardtop, purchased new in July, 1964. About 9:00 p. m. on Friday, August 7, 1964, he parked it in the parking area of the Diplomat Motel on Kingshighway in the City of St. Louis. Early the next afternoon, Saturday, he found that it had been stolen and notified the police. It bore an Illinois State license plate and an Elmhurst city sticker No. 1018. When it was redelivered to him in Illinois several days later, the front bumper was on the back seat, the hood was loose, the left front fender was loose and certain other appurtenances, including the license plate, were gone.

At 12:05 a. m. on August 10, 1964, two uniformed officers of the St. Louis Police Department drove through the alley which passed at the rear of 3967 Evans Street; in a garage open to the alley at that location they saw one car, which one of them described as a Nash; at 1:48 a. m. they passed that garage again and saw a 1964 white hardtop Chrysler standing beside the other car with its hood and humper removed, tools on the floor around the front of the Chrysler, and a lighted flashlight on the floor; the hood and bumper were in the garage. They saw no one in the garage at that time. The officers parked their car down the alley and took up positions from which they could watch the garage. In about fifteen minutes defendant walked down the alley to the garage, entered it, walked to the side of the Chrysler, picked up a tool and began to work on a front fender or, as one stated, "began to disassemble" the fender; at the time he was

"slightly up under the fender apparently dismounting the bolt." One officer testified that he heard a "ratchet" sound, and the other that he heard a "clanking of metal." There was no light in the garage except the flashlight and such light as came in from the lights in the alley. The officers entered and placed defendant under arrest. The Elmhurst sticker was on the car, but it carried a Missouri State license plate No. MS 3292. The Police Bureau of Identification was called and the hood and bumper were examined for fingerprints; various photographs were taken. An expert from the Police Identification Bureau testified that two fingerprints lifted from the hood of the Chrysler were those of the defendant. The car was towed to a lot used by the police for storage.

Defendant, 52 years of age, had operated one or more automobile salvage yards in St. Louis for about 20 years; one of these was close to the above address. He bought and sold parts of cars and also cars. He testified in his own defense. In substance, his testimony was: that about six or seven days prior to his arrest he had employed one William Wright as a night watchman for his salvage yard; that Wright said he was a distant relative and wanted to borrow some money on account of an accident; that he let Wright live in an apartment at 3967 Evans which he had previously rented for his daughter and her husband (who had then gone back to Milwaukee); that on the night in question, possibly about 11:30 or 12:00, he went to his "office" for his keys, expecting to find Wright there; when he did not find him, he went over to the Evans address where Wright was supposed to be living; he did so by entering the alley at the rear; that he saw the flashlight burning in the garage, called for Wright and got no answer, saw the two cars, and saw the bumper and hood lying in the other car which he said was his; that he took the hood out and set it up against the wall, looked around, and went to the front of the house where he knocked on the door, still trying to find Wright. According to his tes-

timony, it was there that he was arrested; he admitted having picked up a tool while in the garage, stated that the tools were his and that his employees had access to them, and that they used the tools in the salvage yard. He denied making various statements to the officers concerning the Chrysler, denied stealing or tampering with it and, in essence, denied all knowledge of the circumstances until he came on the scene as related. He further testified: that Wright came and talked with him briefly while he was at the police station; that he had bought a 1957 DeSoto from one Jones with the MS 3292 Missouri license plate[1] on it, but he stated that he had not used the plate, and merely let the car stand on the street until Jones finally got a ticket on it; that when he got out on bond he went back to 3967 Evans, broke the lock on the door, and found two shirts and a pair of trousers which belonged to Wright; that he also found a wallet on the floor of the garage near where the right front wheel of the Chrysler had been; that this wallet belonged to Wright and had some of his cards in it; that he had not located Wright, and that some of his money and a check were missing from his cash register, for which he blamed Wright.

In rebuttal the prior owner of the 1957 DeSoto, Percy Jones, testified that he sold and delivered the car to defendant with the Missouri license plate on it, that he later called defendant and asked him to destroy it, that he subsequently got a parking ticket on that car which he took to the defendant, and that the latter again agreed to destroy the plate and to pay the ticket. The police officers, recalled in rebuttal, testified that they saw defendant at the fender of the Chrysler and arrested him there, that they never saw him at the door of the house, that when they questioned him he stated that an "unknown white male" (defendant being colored) had brought the car to him telling him that if he dismantled certain parts he could have the rest of it, and that

he asked the man no questions. The officers also testified that they saw no wallet in the garage, although Officer Searcy made an inspection with a light at the time of the arrest, and again made an inspection after the car was taken out.

Defendant was represented at the trial by privately employed counsel; after the appeal was taken other counsel stated in correspondence that he had been employed. No brief has been filed on defendant's behalf. There is no indication in our record of indigency, no order was made permitting this appeal in forma pauperis, and defendant is on bond pending appeal. The recent decision in Bosler v. Swenson (CA 8), 363 F.2d 154 (July 14, 1966) is, therefore, inapplicable and we proceed to consider on the merits the assignments of the motion for new trial in accordance with our past practice.

We shall not consider those assignments in the order in which they appear; some will not require substantial consideration. The assignment that the evidence was insufficient and that a verdict of not guilty should have been directed is denied, without discussion. It clearly appears from our statement of facts that the jury was properly permitted to draw an inference of guilt from the evidence.

■ The defendant offered and the court refused an alibi instruction. It appears to be sufficient in form and the State, in its brief, raises no question as to its sufficiency. Counsel seek to sustain the ruling on the ground that no testimony was produced which would support an alibi defense, except perhaps the testimony showing that defendant was arrested in front of the house instead of in the garage, and they state that "The testimony of the defendant places him at the scene at the approximate time of the crime." However, the State further says: "And the defendant did testify as to his whereabouts prior to his going to the garage and prior to his arrest. His testimony con-

---

1. At certain points in the evidence reference is made to "plates" in the plural. We shall refer to "plate."

cerning his search could have put him elsewhere while the hood and fender were removed from the car. * * * the defendant's testimony would put him elsewhere at the time the hood and the bumper were removed from the motor vehicle." While the defendant's testimony is somewhat vague as to his actual locations at specific times, there is no doubt that his testimony did put him elsewhere from approximately twelve o'clock (midnight) until the moment when he was seen to enter the garage from the alley, which is fixed at approximately 2:05 a. m. It was during this time that the hood and bumper of the Chrysler were presumably removed; such was the State's theory. The car was not there at 12:05. The information charged that defendant tampered with the car "by removing the front bumper and hood," and the main instruction of the State specifically submitted that hypothesis. Defendant testified that he was not there when that was done. The direct evidence of his tampering with a fender did not meet the requirements of the information and the instruction. Defendant was not charged with,—nor did the court submit,—any theory that he acted jointly with others, in which event his personal presence might conceivably be unnecessary. Defendant's requested instruction on alibi should have been given and the judgment will be reversed for that reason. See, generally: State v. Bobbitt, 228 Mo. 252, 128 S.W. 953; State v. Brown, 247 Mo. 715, 153 S.W. 1027; State v. Washington, Mo., 364 S.W.2d 572; State v. Pope, 338 Mo. 919, 92 S.W.2d 904; State v. Bounds, Mo., 305 S.W.2d 487, loc. cit. 491.

 The contention is also made that the court should have given an instruction "on the lesser offense of climbing in and upon a motor vehicle" under § 560.175(2). The comparable wording of the statute is "upon or into." It will suffice to say that there was no evidence to support such a submission and it was unnecessary to so instruct. State v. Burns, Mo., 328 S.W.2d 711; State v. Washington, Mo., 357 S.W.2d 92. In this case a conviction of the crime of tampering or an acquittal was required. State v. Murray, Mo., 280 S.W.2d 809.

 Complaint was also made of the failure of the court to give a proffered instruction on circumstantial evidence, for the stated reason that the State relied *substantially* on circumstantial evidence. Such a point is available if and when the State relies entirely upon circumstantial evidence, and the case is so submitted. The giving of such an instruction is not mandatory where there is also direct evidence. State v. Loston, Mo., 234 S.W.2d 535; State v. Butler, Mo., 353 S.W.2d 698; State v. Cheatham, Mo., 340 S.W.2d 16; State v. Washington, Mo., 364 S.W.2d 572. In view of the insufficiency of this assignment, we shall not determine here whether there was direct evidence of the crime. Upon retrial, the court should consider that question in ruling upon the instructions. We do call attention to the fact that the eyewitness testimony here concerned acts of the defendant which occurred *after* the bumper and hood were removed. The court may also consider the form of the instruction if one is hereafter proffered, and if the evidence requires that one be given.

 Error is claimed in the court's rulings permitting a rather lengthy cross-examination of the defendant concerning the license plate found on the Chrysler and the supposed or possible misuse thereof by the defendant; also, in permitting rebuttal testimony from Percy Jones concerning that plate. The objections were that the evidence was irrelevant, that it tended to prove the commission of an independent crime, and that it concerned a collateral matter. Presumably the objection concerning "another crime" referred to a misuse of the license plate of another person. All objections, as well as a motion for a mistrial, were overruled. We have related the substance of the evidence which was so received. We consider the point here only because it will presumably arise at another trial. While perhaps some of the question-

ing was conducted in unnecessary detail, we rule that the subject matter was relevant and admissible. There are well-recognized exceptions to the rule prohibiting the proof of other and independent crimes. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307; State v. Holmes, Mo., 389 S.W.2d 30, 33; State v. Ballard, Mo., 394 S.W.2d 336, 340–341; State v. Anderson, Banc, Mo., 384 S.W.2d 591. Such evidence is admissible when it has a legitimate tendency to establish the defendant's guilt of the charge for which he is on trial. Here the license plate found on the Chrysler at the time of defendant's arrest was shown to have been last legally used on an old car which was sold to the defendant and of which he had complete control; it next appeared on the stolen car when defendant was tampering with a fender. The essential facts concerning the plate were admissible as tending to prove his guilt.

The defendant should not have been cross-examined concerning the time which he served in the penitentiary in Mississippi on his prior conviction. He had admitted the conviction, and the time served was not a material element going to his credibility. We do not find it necessary to rule whether this was prejudicial. It should not occur again. We find no error in the admission of the rebuttal testimony of the police officers, objection being made that such testimony was merely cumulative and not proper rebuttal.

As a final point we mention the assignment of error made concerning the State's opening and closing arguments to the jury, specifically that defendant's prior conviction was argued for the purpose of establishing guilt. We have concluded that the arguments, taken in their full context, should be construed as going merely to the question of credibility, but counsel approached the borderline of impropriety more closely than necessary or desirable. We take this opportunity of stating, as applicable to this case and all others, that, where prior convictions have been presented to a jury for the sole legitimate purpose of affecting a defendant's credibility, the final arguments of the State should be carefully confined to that purpose and subject. See State v. Mobley, Mo., 369 S.W.2d 576, 579–580; State v. Cook, Mo., 282 S.W.2d 533; State v. Jones, Mo., 221 S.W.2d 137.

The judgment is reversed and the cause is remanded to the trial court for such further proceedings as appear proper.

All of the Judges concur.