STATE of Missouri, Plaintiff-Respondent,

v.

Ronald Melvin HOELZER, Defendant-Appellant.

No. KCD 26305.

Missouri Court of Appeals,
Kansas City District.

April 2, 1973.

William A. Seibel, Jefferson City, for defendant-appellant.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before PRITCHARD, P. J., SWOFFORD and WASSERSTROM, JJ., and HARRY A. HALL, Special Judge.

WASSERSTROM, Judge.

Defendant was charged with murder and as a second offender. The jury found him guilty of murder in the second degree, and the court imposed a sentence of 99 years.

On June 19, 1971, defendant was an inmate in the Missouri State Penitentiary at Jefferson City. Early in the afternoon on that date, he left his cell and went to J Hall, where food was being served. Charles Monroe Smith, another inmate, was serving iced tea in the serving line. After defendant got to the serving line, a fight occurred which resulted in Smith's death.

Two guards were present at the time and testified at the trial. Neither of them saw the commencement of the affray, but they both were eye witnesses to the later stages. Both guards testified that defendant with a knife in his hand was chasing Smith, with Smith trying to get away. Smith slipped or fell when he got to a flight of stairs and crawled under those stairs out of sight. Defendant crawled in after Smith and then came out alone. One of the guards, Howell, testified that he saw defendant stab Smith several times during the course of the chase described. The other guard, Lane, did not actually see any stabbing but he did see defendant "striking" Smith with a knife in his hand. Lane further testified that after defendant backed out from under the steps he exclaimed, "How do you like this, you mealey-mouthed son-of-a-bitch?"

Defendant's trial testimony was as follows. He and Smith had a serious altercation earlier in the day. When defendant came to the food line, Smith lunged out at him with a knife in his hand. The two then began fighting, with defendant succeeding in getting hold of the knife. Defendant summarized what then happened in these words: "We struggled, fought. He got stabbed and died."

The prison captain, Deardeuff, was called to J Hall and took the knife from defendant. As he escorted defendant from the hall, another prisoner asked defendant what had happened and defendant replied, "I just killed that son-of-a-bitching Smith".

Two days after Smith's death, defendant gave a written statement. He was accorded a full Miranda warning, and defendant does not contend on this appeal that his statement was not completely voluntary. That statement, which was in defendant's own handwriting, states in part "i [sic] had a knife which was concealed in one of the washrooms and when i [sic] came out at about 2:00 p.m. for the supper line i [sic] went directly to him and begin [sic] stabbing him, after wards i [sic] surrendered my knife."

We will now take up seriatim the points of error claimed in defendant's brief.

I

■ Defendant challenges the sufficiency of the State's showing that Smith died of the stab wounds inflicted by defendant. Two doctors made examinations of Smith's body on the same day as the fight, and both testified to Smith's death and that the stab wounds were the cause of death. Defendant argues, nevertheless, that this testimony was insufficient in that the doctors did not perform an autopsy and they did not probe the wounds to ascertain whether they were of sufficient depth to penetrate the heart. Defendant also points out that Dr. Nemer admitted on cross-examination that he could not be "certain" whether the death was from the wounds or from heart failure.

However, the testimony was that Smith was in good health prior to the time of this fight. Furthermore, Dr. Strong testified that the cause of death to a degree of medical certainty was the stab wounds. This, together with all the circumstances surrounding Smith's death, constituted more than sufficient evidence for submission to the jury on the matter of corpus delicti. State v. Colbert, 226 S.W.2d 685, l.c. 686 (Mo.1950).

II

Next, defendant complains that the trial court excluded evidence as to threats made by and the bad reputation for violence of Smith, until the giving of testimony by defendant on the matter of self-defense. Defendant attempted to show by cross-examination of witnesses for the State that Smith had a bad reputation for violence and turbulence, but the trial court sustained objections to those efforts on the ground that there had not as yet been a proper foundation by a prima facie showing of self-defense.

Later, after the State had closed its case, defendant's counsel made an opening statement in which he projected that defense would be made on the theory that defendant had been engaged in self-defense against an attack by Smith. Following that opening statement, defendant called as his first witness Rutan, through whom he attempted to show that Smith had made threats against defendant's life, that Smith had been attempting to obtain a knife, and that Smith had a bad reputation for violence. The State's objection to this testimony was sustained, on the ground that there had not as yet been a proper foundation by prima facie evidence of self-defense.

Thereupon, defendant himself took the stand and testified that he had been acting in self-defense on June 19, 1971, during the affray with Smith. After that testimony by the defendant, the testimony by Rutan, previously excluded, was admitted and testimony from other witnesses to like effect was also admitted.

Defendant's argument here is that Rutan should have been permitted to testify without any requirement of prior testimony from the defendant. In support of this argument, defendant contends that a sufficient foundation had been laid by his opening statement, and further, that the requirement that defendant testify first violated his constitutional rights against self-incrimination.

■ Defendant is clearly wrong in the argument that his opening statement

was a sufficient foundation for the evidence in question. The rule is that a foundation for this type of evidence must be laid "by evidence" of self-defense. This is admitted by defendant himself in his brief. The requirement is supported by State v. Reed, 137 Mo. 125, 38 S.W. 574 (1897); State v. Whitchurch, 339 Mo. 116, 96 S. W.2d 30 (1936); 40 Am.Jur.2d, Homicide, § 303, p. 571. The opening statement does not meet that requirement, since it is black letter law that an opening statement does not constitute evidence. 23A C.J.S. Criminal Law § 1086, p. 109, n. 56.

■ Defendant is equally mistaken in his constitutional argument. He was free to show the necessary foundation in any fashion and by any witnesses he chose. If he found that there was no other way to prove this foundation other than by means of his own testimony, then he was faced with a strategic and tactical choice which not uncommonly falls the lot of criminal defendants. No constitutional problem is thereby caused.

### III

Next, defendant complains that the State was improperly permitted to cross-examine him with respect to prior offenses. He argues that the purpose of this cross-examination was to raise the inference that if defendant had broken the law before, he would and did break the law again. That was not the theory upon which this cross-examination rested. Rather, the cross-examination was for the entirely proper purpose of impeachment of his credibility as a witness.

■ Defendant cites cases standing for the general rule that the State may not introduce evidence to prove independent crimes not charged in the case on trial. Those cases are inapplicable. The cross-examination here was confined to prior convictions, which under unquestioned law can be used as the basis for impeachment.

■ A more serious question arises by reason of the fact that the prosecuting attorney inquired not only as to the fact of prior convictions, but also as to the length of the sentences imposed. State v. Slay, 406 S.W.2d 575 (Mo.1966) holds that cross-examination should not extend as to the length of the sentence, although it is to be noted that under the facts of the Slay case the sentence had already been completely served. The State argues that the Slay case does not apply in a situation where the witness is still an inmate currently serving one or more sentences, and it cites in support State v. Hood, 313 S.W. 2d 661 (Mo.1958). The Slay case did not overrule or even question the Hood and similar rulings, and therefore, the distinction made by the State appears to be sound.

In any event, the opinion in the Slay case specifically reserved ruling as to whether the cross-examination there was prejudicial. We hold that even if it could possibly be considered that the extent of cross-examination here went too far, even so any such error was nonprejudicial under all the facts and circumstances of this case.

### IV

Finally, defendant complains that a mistrial should have been declared because of a portion of the prosecutor's closing argument. The portion in question was as follows: "What sort of regard does this man have for human life, anyway? From his own mouth you heard that he is serving two life sentences for murder in the first degree and two life sentences—I mean two 99-year sentences for murder in the second degree. And now he has added to his credit a fifth murder." Defendant's counsel objected and the court sustained the objection. Defendant then asked that the jury be discharged, but the court ruled: "No. The jury will disregard that and I have instructed the jury on that matter. Your request denied."

The trial court is accorded a wide discretion in how far to go with respect to objectionable argument of counsel. The court here did sustain the objection and instructed the jury to disregard the matter in question. There is no showing of any abuse of discretion in declining to go further by the drastic remedy of declaring a mistrial. State v. Cashman, 485 S.W.2d 431, l.c. 434 (Mo.1972); State v. Tate, 468 S.W.2d 646 (Mo.1971); State v. Chester, 445 S.W.2d 393 (Mo.App.1969).

The judgment is affirmed.

All concur.