# THE STATE v. GEORGE ARNOLD, Appellant.

### Division Two, November 19, 1907.

1. **EVIDENCE: Cross-Examination: Excluded For Time Being.** Where the counsel for defendant asked a State witness if the prosecuting witness had not told him that he would on a previous occasion have killed defendant but for the prosecuting witness's wife, and the State's attorney objected to that as not yet competent, and the court sustained the objection to the evidence as not competent at that time, that is not an absolute denial of the right of defendant to show the threats against him by the prosecuting witness; and its exclusion then was not error. The order in which testimony is to be admitted is largely a matter within the discretion of the trial court; and if defendant wished to insist on the inquiry, he should have renewed it after he had developed his theory of self-defense.

2. ———: **Threats: No Proffer of What Threats.** The exclusion of evidence of threats, where no effort was made to show what threats, if any, were made, is not error. A mere refusal to hear an answer is not alone sufficient to constitute error, but the party alleging error must at the time of the refusal indicate the nature and character of the evidence he proposes to elicit.

3. ———: **Impeachment of Witness: Former Conviction.** The prosecuting witness was asked if he had not entered a plea of guilty to having drawn a pistol on defendant, and replied that he had pleaded guilty to carrying a pistol, but not to drawing it. He was then asked if that was the only conviction that had ever been made against him for carrying concealed weapons or for assault upon any person. *Held*, that the judgment should not be reversed for the exclusion of an inquiry so broad and unlimited as this, no tender being made of any such conviction.

4. ———: **Communicated Threats.** It was not error to refuse to permit defendant to testify to what a subpoenaed and present witness told defendant in regard to alleged threats made by the

State v. Arnold.

prosecuting witness, in view of the whole record, which shows, according to defendant's own version, that the prosecuting witness was thirty or forty yards distant when he shot him with a. gun, and had said no word, and made no display of weapons, but was shot in the back as he was fleeing from defendant.

5. SHERIFF: Talking to Jury. The mere fact that the sheriff told a member of the jury that two noted horse thieves, then in jail, were going to plead guilty and take four years in the penitentiary, is no ground for reversing the judgment, if an examination of the jurors shows that such statement did not influence them in affixing defendant's punishment, and they were otherwise guilty of no misconduct.

6. INSTRUCTION: Apprehension. Where the instruction given for the State on the subject of apprehended danger is all that defendant could have asked upon his own testimony, a refusal of an instruction on the same subject asked by him is not error.

7. ————: Threats: Uncommunicated. Where the only difference between the State's given instruction and the defendant's refused instruction on the subject of threats is that defendant's refers to uncommunicated threats, while the State's does not, and there was no evidence of uncommunicated threats, it was not error to refuse defendant's instruction.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard,* Judge.

Affirmed.

*John M. Atkinson* for appellant.

(1) Emmons was a witness for the State, and, as such, it was competent to cross-examine him upon the whole case—even as to threats made by the prosecuting witness, Rutherford. Laws 1905, p. 307, sec. 4655a; State v. Soper, 148 Mo. 235; State v. Hudspeth, 159 Mo. 200. (2) The court erred in not permitting the witness, Mrs. Julia Arnold, to testify as to the threats made by the prosecuting witness on Friday, prior to the shooting on Monday—the day of the trouble at the Arnold gate. (3) It was competent for defendant to cross-examine the prosecuting witness as to former convictions, and the court thereby committed reversible

error in denying to defendant that right. R. S. 1899, sec. 4680; Land & Lumber Co. v. Chrisman, 172 Mo. 617; State v. Blitz, 171 Mo. 530; State v. Heusack, 189 Mo. 311; State v. Thornhill, 174 Mo. 370; State v. Woodard, 191 Mo. 633; State v. Barrington, 198 Mo. 80; State v. Spivey, 191 Mo. 87; State v. Brooks, 100 S. W. 416. (4) The court erred in refusing defendant the right to testify to the threats made by the prosecuting witness at the time of the first trouble at Grandin, and afterwards communicated to defendant before the shooting. State v. Hudspeth, supra. (5) It was competent for defendant to testify as to the threats communicated to him by Stephenson. Such a statement was original evidence, for the purpose for which it was offered. Greenleaf on Evidence (15 Ed.), sec. 101. (6) The testimony of witnesses Lee, Whitwell and O'Neal show that the sheriff violated the provisions of section 2629, and the court erred in not granting a new trial on the showing on the motion. (7) Instruction 1, asked by defendant and refused by the court, correctly states the law of self-defense, and the court erred in refusing it. No instruction given by the court, on its own motion, sufficiently covered this part of the case. State v. Higgerson, 157 Mo. 400; State v. Palmer, 88 Mo. 568; State v. Hudspeth, supra. (8) Instruction 2, asked by defendant and refused by the court, correctly declared the law on threats. Some of the threats were not communicated (or at least the evidence is in doubt as to whether they were communicated or not, before the shooting), to the defendant, until after the shooting.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) At the time of the cross-examination of Emmons, the record does not show that defendant had disclosed what his defense was going to be; hence, the

trial court could not tell whether the threats were material or not. If defendant had denied the shooting, had sought to prove an alibi, or claimed that the shooting was done by some one other than himself, the threats alleged to have been made by the prosecuting witness against defendant would have been wholly immaterial. But if it was proper for defendant to prove threats at said time, this court cannot review said alleged error, as defendant made no offer of proof and did not state what he expected to prove. The materiality of the excluded evidence cannot, therefore, be considered by this court. State v. Hodges, 144 Mo. 54; State v. Martin, 124 Mo. 514. (2) Much stress is laid by counsel for defendant upon refusal of the trial court to permit him to prove by the prosecuting witness that the prosecuting witness had been convicted for carrying concealed weapons and for assault. It is submitted that this question was too broad, as it covered the entire life, almost, of the prosecuting witness. (3) Counsel for defendant insists that error was committed in refusing to allow the defendant to testify to what Stephenson told him. Stephenson, at that stage of the trial, had not testified, and did not testify in the case. What Stephenson stated, either about defendant or the prosecuting witness, was the merest hearsay, and all evidence in regard thereto was properly excluded. There was no statement made by counsel for defendant that he expected to prove by the defendant that Stephenson detailed to the defendant any threats made to the prosecuting witness; hence, the matter cannot be considered by this court.

GANTT, J.—At the March adjourned term of the Ripley Circuit Court, 1906, the defendant was tried and found guilty of an assault with intent to kill George Rutherford, in Ripley county, on the 4th day of September, 1905. The prosecution was commenced

by information filed by the prosecuting attorney, and
the defendant was duly arraigned and convicted by
jury regularly impaneled. From his conviction he has
appealed to this court. The errors for which he seeks
a reversal of the judgment are those which he con-
ceives were committed in the admission and the rejec-
tion of testimony and in the giving and refusal of
instructions and the alleged misconduct of the prosecu-
ting attorney in his argument and of the sheriff in
relation to his duties with the jury. All of these al-
leged errors will be considered in the course of the
opinion.

The testimony discloses that some time prior thereto
and on the 4th day of September, 1905, the prosecuting
witness, George Rutherford, was living in the north
part of Ripley county. About four weeks prior to the
difficulty out of which this prosecution has grown, the
defendant, George Arnold, moved from the town of
Grandin in Carter county to a vacant house just across
the lane and about fifty yards from the house of the
prosecuting witness, Rutherford. It appears that Ruth-
erford and the defendant had been acquainted with
each other for some seven or eight years, and they
were both tie-choppers, and Rutherford had invited
the defendant to come up and occupy the house in
which he was living at the time of the difficulty. It
appears that some two weeks prior to the assault upon
which this prosecution is based, there was some trouble
between the defendant and Rutherford at a store in
the town of Grandin. Rutherford reminded the de-
fendant that he, the defendant, had purchased an axe
at McDowell's store, which Rutherford had stood good
for. Defendant admitted that he had not paid for the
axe, and Rutherford demanded that he should pay for
the same. Later on during the same day, they renewed
their conversation about the axe, and defendant became

206 Sup—38

angry and threatened to strike Rutherford with a bottle of coal oil, but some one interfered and defendant then picked up a rock and threatened to knock Rutherford's brains out. Rutherford declined to fight, saying he was not able to fight. It seems that Rutherford made complaint to a justice of the peace and had defendant arrested for assault, and defendant in turn made complaint to a justice of the peace and had Rutherford arrested for carrying a pistol. There was evidence that Rutherford requested one or two persons to loan him a pistol, which he desired to take home and protect himself with, but he did not get one. On the day that the case against the defendant was to come up before the justice of the peace, he appeared, but for some reason not explained in the record neither the prosecuting witness nor the justice was present and the defendant accordingly went home. On his way home about three o'clock in the afternoon, defendant saw Rutherford in the little lane which runs between the two houses. According to the State's evidence, Rutherford was about one hundred yards from his house picking up some stove wood to carry to his home. He saw the defendant some twenty steps away carrying two guns; one the defendant had in his hands, and the other strapped over his shoulder. Rutherford being unarmed, threw up his hands and said, "Don't shoot" and started to run. The defendant fired one shot, which took effect in Rutherford's left side, and then fired another shot which took effect in Rutherford's back. Both shots were fired from a shotgun. The State's evidence further tended to show that Rutherford was in his shirt sleeves and had no weapon upon or about his person, and made no motion indicating that he was going to draw a weapon. Immediately after the firing of this second shot Rutherford fell to the ground, and the defendant went to a neighbor's and told Mr. Thompson and Mr. Emmons that he had

shot Rutherford and left him lying in the road, and these two gentlemen went to the house of the mother-in-law of Rutherford and went with her to where Rutherford was lying and carried him home. The defendant's version of the trouble is about this, that he was going along the road to his home and all of a sudden Rutherford jumped into the road from the south ahead of him some thirty or forty yards, his left side towards the defendant and his right hand on his right hip pocket as though about to draw a revolver; that no words were spoken, that defendant immediately began to shoot, firing as rapidly as he could; that he shot believing that the prosecuting witness was there for the purpose of killing him. Upon examination it was discovered that there was some twenty-five holes in the back and body of Rutherford made by double-aught shot, and that some of them entered the body just above the kidneys. There was evidence on the part of the defendant that he had been told of divers threats that Rutherford had made against him, and there was also evidence tending to show that Rutherford's reputation for peace was bad, but on rebuttal the State proved that Rutherford's general reputation for peace was good.

I. The first ground upon which defendant seeks a reversal is that the court refused to permit defendant to cross-examine State's witness Emmons, in regard to a threat made by the prosecuting witness. An examination of the record discloses that the counsel for the defendant inquired of the witness if he had a conversation with the prosecuting witness with reference to some trouble between Rutherford and Arnold on Friday before the shooting, and asked him if the prosecuting witness told him that he would have killed Arnold but for his, Rutherford's, wife. The prosecuting attorney objected to that as not yet competent and the court sustained the objection to the evidence as not competent at that time. Conceding, as we do,

that the defendant had the right to cross-examine this witness as to such alleged threats, we think it is perfectly evident that this was not an absolute denial of the right of the defendant to show threats made against him by the prosecuting witness, but as was said in State v. Zorn, 202 Mo. l. c. 30, "If the defendant had not sufficiently developed his defense to the charge as to advise the court of its nature and character, then there could be no prejudicial error in delaying the introduction of that testimony until the defense upon which the defendant relied was sufficiently developed to authorize its admission for the purpose of adding force to the defendant's plea of self-defense." And it clearly appears that the learned circuit court tried the cause upon the theory that if the defendant should develop a defense of self-defense then evidence of threats, communicated and uncommunicated to defendant, were competent and on that theory admitted the testimony of Crider and others. Fully advised of this ruling, counsel for defendant did not, after developing his defense of self-defense, recall Emmons to cross-examine him as to the alleged threat, as he had the right to do. The order in which testimony shall be admitted is largely a matter within the discretion of the court. And where counsel is advised by the court that the evidence he offers is simply excluded for the time-being and not absolutely, and no further effort is made to introduce it, the temporary exclusion of the evidence is no ground for the reversal of the judgment. This ruling applies also in regard to the question propounded to this same witness in regard to what the prosecuting witness said with reference to the shotgun he had in the woods with him. The court merely ruled that it was inadmissible at that time.

II. As to the exclusion of the evidence of the defendant's wife as to the threats made by the prosecuting witness on the Friday before the shooting oc-

curred on Monday, the defendant is in no attitude to complain for the further reason that defendant made no effort to show what threat, if any, was made. It has been uniformly ruled by this court that a mere refusal to hear an answer is not alone sufficient to constitute error, but that it is the duty of the party alleging error to indicate to the court the nature and character of the evidence which he proposes to elicit. [Aull Savings Bank v. Aull, 80 Mo. 199; Jackson v. Hardin, 83 Mo. 175; State v. Martin, 124 Mo. 1. c. 523, 524; State v. Hodges, 144 Mo. 1. c. 54, 55.]

III. When the prosecuting witness, Rutherford, was on the stand, the counsel for the defendant asked him if he did not enter a plea of guilty before the justice of the peace, Lassiemen, of having drawn a pistol on the defendant, and he answered that he had entered a plea of having a pistol, but not of drawing it. He was then asked if that was the only conviction that had ever been against him for carrying concealed weapons, or for assault upon any person, to which counsel for the State objected, and the court sustained the objection, to which ruling the defendant excepted. And this is assigned as error. In support of this assignment we are referred by the learned counsel for the defendant to a line of decisions by this court commencing with State v. Blitz, 171 Mo. 530, in which for the first time section 4680, Revised Statutes 1899, was construed. That section provides: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." Prior to the enactment of that section, it was a settled law of this State that the only convictions of a witness admissible for the purpose of im-

peachment were those for felony or petit larceny. In the Blitz case, the trial court had admitted evidence that the witnesses had been convicted of certain misdemeanors, and it was assigned as error, but this court held that the evidence was competent. Afterwards, in Land & Lumber Co. v. Chrisman, 172 Mo. l. c. 617, it was held to be error to refuse to permit the witness to answer this question: "Were you not indicted for stealing lumber a short time ago, and did you not plead guilty?" In State v. Heusack, 189 Mo. 311, the witness was asked if he had ever been convicted of a crime, and without any objection to the generality of the question, he answered that he had been convicted of a misdemeanor once twenty-five or thirty years before. He was then asked if he was ever convicted in Arkansas, and answered he had not been. It was ruled that it was not reversible error to have permitted these questions and answers. In State v. Thornhill, 174 Mo. 370, the State offered in rebuttal evidence that the witness had been convicted of gambling, but the circuit court struck out the evidence and instructed the jury to disregard it. It was held that gambling, under our laws, was a misdemeanor, and the evidence was proper and that no error had been committed by admitting it. In State v. Woodward, 191 Mo. l. c. 633, it was said by this court: "As to the evidence of prior convictions of criminal offenses, defendant having testified in his own behalf, it was competent to show that fact in a legitimate way, in order to affect his credibility; however, it should be shown by competent evidence." In State v. Brooks, 202 Mo. 106, the record of the former conviction was duly offered by the State and read in evidence. Accepting the construction given to section 4680 in the foregoing cases, the question still arises, ought this judgment to be reversed on an inquiry as broad and unlimited as that which the court refused to compel the witness

to answer? The witness had just promptly admitted that he had been convicted of carrying concealed weapons and that he had pleaded guilty to the charge. Thereupon counsel for the defendant, without limiting his question to any time, place or court, asked the witness if that was the only conviction that had ever been against him for carrying concealed weapons, or for an assault upon any person, without calling his attention to either time, person, place or court in which the conviction might have occurred. And in this connection, it is to be noted that if such other conviction had occurred, it was entirely competent for the defendant to have offered it as original evidence for the purpose of impeachment, and no such proof was tendered. In our opinion, the judgment should not be reversed for the refusal to require the witness to answer this question.

IV. It is insisted that the court committed reversible error in refusing to allow the defendant to testify to what Chester Stephenson told him in regard to alleged threats made by the prosecuting witness. When this evidence was offered, counsel for the State objected because the witness Stephenson had been summoned, and had not testified that the prosecuting witness had made any threats. In State v. Harris, 76 Mo. l. c. 364, a similar question was propounded to the defendant, and upon the objection of the State it was excluded. It appeared in that case that the person who had communicated the threat to the defendant was dead, and this court cited the case of Carico v. Com., 7 Bush (Ky.) 124, in which it was held that the accused had a right to prove that a person *then dead* had, but a short time before the homicide, told the defendant that the deceased had armed himself with a shotgun to kill him; that while it was not legal evidence that deceased had armed himself to kill the accused, it was competent to prove that accused had

so heard and may have had the right to so believe, and to that extent and for that purpose, it was admissible. The effort in this case then was to prove a communicated threat, and the alleged threat, if made, was made in the presence of Bass Crider and Chester Stephenson, both of whom had been supoenaed in the case, and Crider had testified on that point. Stephenson's testimony would have been only cumulative at best. Moreover, it is extremely doubtful whether the alleged threats were admissible for any purpose, because taking the defendant's own version of the shooting the prosecuting witness was thirty or forty yards distant and had not said a word and had displayed no weapon, and the witnesses sent by defendant to his aid found him in a semi-conscious condition, in his shirt sleeves, with no weapon on his person, so that the prosecuting witness at the time he was shot was making no effort to carry said alleged threat into execution or doing any overt act in that direction, and there is nothing in the testimony to indicate that defendant was in any such imminent or apparent danger as would have justified his shooting the prosecuting witness; on the contrary, the physical facts all tend to corroborate the evidence of the prosecuting witness that he was fleeing from defendant, as both shots took effect in his back. [State v. Hays, 23 Mo. 287.] It has often been ruled by this court that neither courts nor juries are required to accept as true evidence which contradicts the admitted physical facts in a case. [State v. Turlington, 102 Mo. 642; State v. Nelson, 118 Mo. 124; State v. Fraga, 199 Mo. 127; State v. King, 203 Mo. l. c. 571.] Our conclusion is that in view of the whole record the exclusion of Stephenson's statement to defendant was not reversible error.

V. Among other grounds for new trial, the defendant assigns misconduct on the part of the sheriff in that after the jury was placed in his charge, he

informed the jury that John and Mart Huson, two noted horse-thieves and jail-breakers, who were then in the jail of said county, were going to plead guilty and take a sentence of four years for their offenses, and that this fact was used as an argument by some member of the jury in affixing the punishment of the defendant. To sustain this charge, counsel for defendant called two of the jurors, one of whom, Mr. Lee, stated that, to the best of his recollection, the sheriff made the statement, in answer to an interrogatory by some one, that the Huson boys were going to plead guilty and take four years. Other members of the jury called on behalf of the State heard no such statement made by the sheriff, and all, as well as Mr. Whitwell, testified that it had no effect upon their verdict. The circuit court found that there was no evidence to sustain the charge of misconduct on the part of the sheriff, and we think the evidence, even if competent, fully justified the court in so finding.

VI. Error is assigned upon the refusal of the court to give instruction number one asked by the defendant. That instruction is in words and figures as follows: "The court instructs the jury that if at the time the defendant shot the prosecuting witness, Rutherford, he had good reason to believe that said Rutherford was about to inflict upon him some bodily harm, and defendant acted in a moment of apparently impending peril and shot for the purpose of averting such apprehended harm, it is not required of him to nicely gauge the proper quantum of force necessary to repel such apprehended harm, and you must acquit him on the ground of self-defense. It is not, however, necessary that the danger should have been actual or real, or that the danger should have been about to fall upon him. All that is necessary is that the defendant should have had reasonable cause to believe that state of facts, and did so believe, and shot to

prevent the consummation of such design on the part of Rutherford.''

On the subject of self-defense, the court gave instruction number 8 in words and figures as follows: ''The court instructs the jury that if they believe from the evidence that at the time defendant shot Rutherford, he had reasonable cause to apprehend a design on the part of Rutherford to take his life or do him some great personal injury and that there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and to avert such danger he shot, and at the time he shot he had reasonable cause to believe, and did believe, that it was necessary for him to shoot Rutherford in the manner in which he did to protect himself from such apprehended danger, then the jury should acquit him on the ground of self-defense. It is not necessary that the danger should have been actual or real or impending and about to fall; all that is necessary is that defendant had reasonable cause to believe and did believe these facts. On the other hand, it is not enough that defendant should have so believed; he must have had reasonable cause to so believe. Whether or not he had reasonable cause is for the jury to determine under all the facts and circumstances given in evidence. If the jury believe from the evidence that the defendant did not have reasonable cause to believe they cannot acquit him on the ground of self-defense, although they believe the defendant really believed he was in danger.''

This instruction was all that the defendant could have asked even upon his own testimony, and the court committed no error in refusing to give his instruction number one.

Defendant also assigns as error the refusal of his instruction number two, which is in words and figures as follows: ''The court instructs the jury that you should take into consideration the evidence of threats

made by the prosecuting witness, Rutherford, prior to the shooting by defendant. If you believe that any such threats were communicated to defendant, then such threat or threats may be considered by you as explaining the conduct and apprehensions, if any, of defendant, at the time of the shooting. You will also consider any threats you may believe were made by the prosecuting witness, Rutherford, and not communicated to defendant, if any, for the purpose of explaining the conduct and demeanor of said prosecuting witness Rutherford, at the time of the shooting." There was no error in refusing this instruction, because the court fully covered this point in instruction number two given for the State. In fact the only difference between the two instructions is that the defendant's instruction refers to "uncommunicated threats," and there was no evidence of any such threats in the case. All the threats were communicated to the defendant.

We have carefully examined all the testimony in this case and are of the opinion that the defendant had a fair and impartial trial, and the evidence was amply sufficient to sustain the verdict of the jury. Finding no reversible error in the record, the judgment of the circuit court must be and is affirmed.

*Fox, P. J.*, and *Burgess, J.*, concur.