STATE v. H. H. BURNETT, Appellant.—No. 39293.—188 S. W. (2d) 51.

Division Two, June 11, 1945.

*Claude F. Cooper* and *J. M. Haw* for appellant; *T. J. Crowder* of counsel.

46

*J. E. Taylor,* Attorney General, and *A. V. Owsley,* Assistant Attorney General, for respondent.

TIPTON, J.—An information was filed in the circuit court of New Madrid County, Missouri, charging the appellant, his wife, Susie Burnett, and his son, Gene Burnett, with murder in the first degree for having killed Hughey Kitchen, the town marshal of Parma, Missouri. An application for a change of venue was sustained, and the cause was sent to. the circuit court of Mississippi County. A severance was granted and on appellant's trial, he was found guilty of murder in the second degree. His punishment was assessed at imprisonment in the State Penitentiary for a term of fourteen years.

Appellant's .first contention is that the evidence is insufficient to sustain the verdict of the jury. This calls for a review of the evidence.

In appellant's testimony, he admitted the shooting and killing of the deceased, but pleaded justification in so doing.

The evidence most favorable to the State is as follows: The deceased was killed in the appellant's restaurant in the town of Parma, Missouri, late in the afternoon of Saturday, April 17, 1943. On the day of the killing, the deceased, who was the town marshal, was leaving the pool hall next door to appellant's place of business. Gene Burnett and his mother, Susie Burnett, were sitting in the back room of the restaurant and the windows were open. Some remark was made by Gene Burnett loud enough for deceased to hear. The deceased asked Gene if he were talking to him. Gene said he was not, but was talking to his mother. Gene said something else to his mother, whereupon the deceased turned and said, "You are talking to me too." Gene said, "No, I'm not. I am talking to my mother." Deceased entered the room and undertook to arrest Gene. Gene told him that he had done nothing, and would not go. Deceased then said, "I'll go to the City Hall and come back, and I'll take you dead or alive."

Otho Gee, a witness for the State, testified as follows: "A. Well, I was standing by a post and he [deceased] called me over, said, 'Come here,' and he met me about middleways of the street and asked me if I had a blackjack, *he was going to deputize me*. I told him no. He said we would go by the city hall and see if we could find one; he looked and couldn't find one and said, 'We'll go anyway,' and we crossed over and went to Mr. Burnett's restaurant. When we got to' the front door he opened the door and turned and said, 'You are sworn in to the full extent of the law.' " (Italics ours.)

The witness and deceased then went to the kitchen, which was in the rear of the restaurant. In the kitchen were Mrs. Evans, the cook, Mrs. Susie Burnett, and Gene Burnett. The appellant followed the deceased and witness into the kitchen. Mr. Gee further testified: "A. Well, Gene was sitting behind a cook table. Hughie said, 'We are going to arrest you.' He said, 'No, I ain't going.' He told me to go to the end of the table, and I started around and Gene got up and said, 'He ain't big enough to take me,' and Hughie jerked his gun, and Mrs. Burnett said, 'Don't do that.' Hughie said, 'I'm not going to hurt him,' then she said to Gene, 'Go ahead and go with him,' and he put his gun back in his pocket. They started out and Gene said, 'Let me have my coat.' Mr. Kitchens said, 'You don't need a coat, we're going over to the city hall,' and they got to scuffling and Hughie pulled out a blackjack, and Gene reached up to get his coat and Hughie gave him a jerk, and he grabbed him."

After Gene Burnett grabbed the deceased, and while they were scuffling, the appellant shot deceased. Mr. Gee then testified: "A. Well, when he stepped in to fire the second shot, Hughie grabbed Mr. Burnett's gun and hollered to me to get the gun. I started to step in to get the gun and seen Gene's hand on Hughie's gun—either

Gene's hand on Hughie's gun and Hughie's hand on his hand, or Hughie's hand on the gun and Gene's hand on his hand, I couldn't tell which hand was which, and he drawed back as if to hit me and I pulls Gene against the wall and Mrs. Burnett grabbed me, and the second shot was fired."

On cross-examination, this witness testified that deceased never told him or Gene Burnett what he was arresting Gene for; that he did not state that he had a warrant for his arrest; and that all deceased told Gene was, "Come and go with us, you are under arrest."

"A. Well, Gene said, 'I'm not going,' and he told me to go around the end of the table; Gene got up and said, 'He ain't big enough to take me,' and drawed back to hit me, and Hughie jerked his gun out." When deceased drew the gun on Gene, they were three or four feet apart. The witness, also, testified that when they first went into the kitchen, deceased "kind of pushed" Mrs. Susie Burnett back.

There was, also, testimony to the effect that just prior to the time the first shot was fired, deceased had a blackjack in his right hand.

Other witnesses testified they came into the restaurant about the time the first shot was fired and they observed no threatening or abusive conduct by deceased toward appellant, his wife, or son.

W. M. Tucker testified that prior to the date deceased was killed, he was in appellant's restaurant when deceased passed by and said, "There goes Hughie Kitchens." The appellant replied, "Yes, sir, that's a dirty son-of-a-bitch; if he ever sets foot inside my building to get people like he did in other people's, he'll go out of here a dead man." Several other witnesses testified to similar statements made by appellant.

Appellant's and his witnesses' testimony showed that appellant killed deceased in self-defense and in resisting the arrest of his son, Gene, and that appellant was barely acquainted with deceased and had no ill feeling toward him.

There was no evidence in this record that shows why deceased was attempting to arrest Gene Burnett or that he had ever committed any crime or that he was ever suspected of committing a crime.

Appellant contends that the State's evidence is not sufficient to show him guilty of murder in the second degree, and, at best, the only crime he could be convicted of would be manslaughter.

There is not the slightest evidence that Gene Burnett had committed any crime. There is no evidence that he had committed any misdemeanor, either in the presence of deceased or otherwise; nor is there any evidence that there was any suspicion that Gene Burnett had committed a felony. Also, there is no evidence that there had been a warrant for his arrest. In fact, Gene Burnett stated that he had not done anything that would justify his being arrested. Under these circumstances, the attempted arrest by the deceased was illegal. State v. Cushenberry, 157 Mo. 168, 56 S. W. 737; Wehmeyer v. Mulvihill,

150 Mo. App. 197, 130 S. W. 681; State ex rel. Patterson v. Collins et al., Mo. App., 172 S. W. 2d 284.

■ An illegal arrest or attempted arrest is adequate provocation to reduce a homicide to manslaughter unless the homicide was in fact committed with express malice. Roberts v. State, 14 Mo. 138; State v. Johnson, 76 Mo. 121; State v. Holcomb, 86 Mo. 371; State v. Tabor, 95 Mo. 585, 8 S. W. 744; 29 C. J. 1144, Sec. 128. The use of a deadly weapon in resisting ■ an illegal arrest of the person is not sufficient to constitute the killing murder. Roberts v. State, supra.

■ An illegal arrest or detention may be sufficient provocation, not only to the person arrested or detained, but also to his relatives. 29 C. J. 1145, Sec. 129. Section 4379, R. S. Mo. 1939, extends justifiable homicide not only in defense of a person's own life, but also in defense of his child or wife.

■ Under the facts in this record, even if the jury did not believe appellant's self-defense plea, he could have been guilty only of manslaughter unless there is evidence that appellant killed the deceased with express malice. We think there is evidence that appellant did kill the deceased with express malice. There is evidence that appellant had made statements that if the deceased undertook to take anybody out of his place of business, deceased would go out dead. Threats of this nature are sufficient to show express malice. 30 C. J. 154, Secs. 367 and 368.

■ We are, therefore, of the opinion that there is substantial evidence to sustain the conviction of murder in the second degree.

Appellant contends that the trial court erred in refusing his requested instructions Nos. B, E, H, I, J, L, M, N, Q, R, and Z.

On the other hand, the State contends that these instructions were covered by the instructions that were given. The instructions given by the court covered murder in the first degree, murder in the second degree, manslaughter, and self-defense. The given instructions were in the usual form, they did not mention illegal arrest or under what circumstances deceased might be a trespasser upon appellant's property. We will not discuss each requested instruction separately, but some of them did embody the theory that the attempted arrest of Gene Burnett was illegal, and, also, the theory under what circumstances the deceased might be a trespasser and the right of appellant to eject him from his premises. It is true that one or two of the requested instructions was covered by appellant's theory of self-defense.

Requested instruction No. Z did correctly define a lawful arrest. We need not discuss each of the refused instructions as to whether they were in proper form for the reason that the fourth subdivision of Section 4070, R. S. Mo. 1939, provides "fourth, whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; . . ."

We have already held that homicide committed in resisting an illegal arrest in the absence of express malice, is, at most, manslaughter. Accordingly, the question should have been submitted to the jury as a part of the law of the case whether an instruction thereon was requested or not. State v. Crowley, 345 Mo. 1177, 139 S. W. 2d 473. But in this case, instructions on the theory of resisting an illegal arrest and on the right of appellant to eject deceased, if he were a trespasser, from his place of business, were requested and if these instructions were not in proper form, it was the duty of the court to give written instructions in the proper form setting forth· the law on these questions.

For the reason stated, the judgment is reversed and the cause remanded. All concur.