249 S.W.2d 373 (1952)
STATE
v.
CUEZZE et al.
No. 42557.
Supreme Court of Missouri, Division No. 2.
June 9, 1952.
*374 Carl L. Anderson, John J. Cosgrove, Kansas City, for appellants.
J. E. Taylor, Atty. Gen., Robert L. Hyder, Asst. Atty Gen., for respondent.
TIPTON, Judge.
This case comes to the writer on reassignment.
In the circuit court of Clay County the defendants were convicted of the offense of carrying concealed weapons. The jury returned separate verdicts, assessing the punishment of each defendant at two years' imprisonment in the state penitentiary. From this judgment these defendants have duly appealed.
The defendants' first assignment of error is: "The court erred in refusing to sustain defendants' motion to suppress evidence for the reason that the defendants' arrest was unlawful and the search of the automobile and the seizure of the pistols was in violation of their rights guaranteed by article 1, section 15 of the Constitution of Missouri, 1945, and by the fourth amendment of the Constitution of the United States."
The statement concerning defendants' arrest as set out in their brief accurately portrays the evidence that was heard by the trial court on this motion. We will, therefore, adopt defendants' statement as the statement of the court. It is as follows:
"Cuezze and DeLuna filed separate motions to suppress evidence procured by unlawful search and seizure. On the hearing of said motions the evidence disclosed that when officers Habert and Powers arrested defendants and their companion Trombina they had no warrant for their arrest; the officers knew of no felony that had been committed, nor were they in pursuit of a felon. Neither of the defendants committed any violation of the law in their presence. They first saw the motor car in which the defendants were riding pull on to Highway 169 off Hill Street, which is in Evans Hills Addition in Clay County. It was a 1947 Chevrolet sedan, maroon color. The officers had received a call from the police dispatcher in Kansas City to investigate three men who were seen in an automobile believed to be a dark Pontiac sedan, which was parked on Hill Street. The officers followed this car from the time it turned on to Highway 169 to a point in Burlington Street in North Kansas City, at which time they made the arrests.
"Defendant Cuezze was driving the car and DeLuna was sitting in the front seat to his right. Upon order, the defendants got out of the car and Officer Habert felt of their persons for weapons, found none and conducted them back to the police car, a distance of about twenty-five feet. Officer Powers searched the automobile and found two pistols under the right front seat. There was a clearance between the floor boards of the car and the bottom of the seat of about four inches. The officers had no report of a Chevrolet being involved in any law violation nor did they have an order to pick up a *375 Chevrolet. They had received no report of a felony having been committed in this district nor were they investigating a felony at the time they stopped the car. The defendants did nothing to indicate they were fleeing from a felony nor anything to indicate they were about to commit a felony. No traffic violations were observed. Information from the dispatcher was that a car, believed to be a Pontiac, had been seen around the vicinity of the Arrow Service Station, which was approximately twenty-five yards south of Hill Street on Highway 169. The men he had been sent to investigate, according to information received from the service station owner, had cashed a twenty dollar bill when they made a purchase of some gasoline, but the officers heard later that the three defendants had only $7.00 in their possession when they were arrested. The defendants were booked for investigation. They saw no other car with three men in it in the neighborhood.
"Trombino, who was acquitted, said the car belonged to a brother or some relative of his. The arrest was made about 10:15 P.M. The defendants said they had just been riding around in the neighborhood, had not stopped anywhere. The police car followed the defendants' car for a distance of about a half mile during which time there was no violation of the law. Powers recognized one of the men as having had a police record, but that had nothing to do with his stopping the car. He stopped the car because of the call he had received about a suspicious car, a car described as a dark Pontiac. There were two pistols under the right front seat of the car. In order to reach these pistols the defendant Cuezze would have had to stretch, but he did not know how far. He did not know about the guns until after he searched the car. When asked, `Well, suspicion was the only cause for the whole thing, is that correct?' he answered, `that is correct.' Powers suspected them of being about to commit a felony, not actually committing one; they had no report of a felony having been committed. His information from the dispatcher was that a suspicious acting car, believed to be a dark Pontiac, had been in the vicinity for some time. After the arrest he received information that one of the occupants of the car had walked behind the filling station. He had no other reason to suspect these three men of being about to commit a felony.
"Glen Goforth, operator of the filling station at the Skyline Courts, testified that he called the police station in reference to a car that was parked on Hill Street which he said was a Pontiac. He got his information about the car from a neighbor. He saw this car from a distance, but saw it do nothing illegal. He saw a man walk from this car down the driveway leading behind the cottages and then walk back up and across the street, but what happened then he couldn't say. He couldn't identify the man. `The officers are mistaken about three suspicious men coming to my station and cashing a twenty dollar bill. I didn't report anything like that.'
"The motion of the defendants to suppress evidence was by the court overruled and exceptions duly saved."
There is not the slightest evidence that these defendants had committed a crime. There is no evidence that these defendants had committed any misdemeanor in the presence of the police officers. There is no evidence that they had any suspicion that these defendants had committed a felony. There was no evidence that these police officers had any warrants for defendants' arrest. In fact, these officers did not know of any crime that had been committed. Under these circumstances, the arrest of these defendants was illegal. State v. Cushenberry, 157 Mo. 168, 56 S.W. 737; Wehmeyer v. Mulvihill, 150 Mo.App. 197, 130 S.W. 681; State v. Burnett, 354 Mo. 45, 188 S.W.2d 51.
*376 Since the arrest was unlawful, of course the search of the automobile in which the two guns were found was an unreasonable search and seizure and prohibited by article 1, section 15 of our 1945 Constitution, V.A.M.S. State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383.
In the case of State v. Smith, 357 Mo. 467, 209 S.W.2d 138, we held that the seizure by state highway patrolmen, without benefit of a search warrant, of a jimmy and other tools, stolen typewriters, etc., from an automobile in which defendant was riding when arrested was unlawful and in violation of defendant's constitutional rights. However, defendant waived his rights upon trial.
"We see no distinction between personal property which defendant may have left in his home and personal property he may have left in his automobile." State v. Jones, 358 Mo. 398, 214 S.W.2d 705, loc. cit. 707. In that case we reversed the action of the trial court in failing to sustain defendant's motion to suppress evidence of the jimmy bar found in defendant's car.
In this case the revolvers could not be seen by merely looking into the car as was the case in State v. Hawkins, Mo.Sup., 240 S.W.2d 688, where the stolen property could be seen by anyone walking by the parked automobile.
Officer Powers testified that he did not know about the guns until after the arrest and the automobile was searched. In fact, defendants were arrested only after this witness recognized one of the men in the automobile and he knew this man had a police record. When asked, "Well, suspicion was the only cause for the whole thing, is that correct?" Powers answered, "That is correct."
The arrest of a person without a warrant cannot be justified on the ground that the arresting officer suspected the person arrested intended to commit a felony when he was doing nothing toward its commission. State v. McBride, 327 Mo. 184, 37 S.W.2d 423. There is nothing in the record that would lead any reasonable person to believe that these defendants were going to commit a crime, let alone any specific crime.
Nor would the fact that one of these defendants had a previous criminal conviction justify their arrest. In the case of McKeon v. National Casualty Co., 216 Mo.App. 507, 270 S.W. 707, loc. cit. 713, the St. Louis Court of Appeals said:
"What then is meant by the words `common fame'? May they be construed to mean that one may be arrested by officers merely because his reputation is bad? We think not. We agree with Macauley that common fame, however strong and general, should not be received as legal proof of guilt. While the question is not free from difficulty, we are of the opinion that common fame must connect the one to be arrested with a specific crime, otherwise one bearing an unsavory reputation would be subject to lawful arrest, no matter how unjustifiable his arrest or how righteous his acts in life. We do not wish to be understood as saying, however, that a bad reputation may not be considered by the police officers in determining whether the related information is credible. In determining whether the evidence tending to show probable cause, if any, is credible, a lesser weight of evidence may determine the credibility of the informant, and the information where the reputation of the accused is bad than where it is good."
Under the circumstances in this case, the search could not be upheld, this for the reason that the settled doctrine that a search of a person is justified only as an incident to a lawful arrest. Here the arrest was unlawful. The trial court erred in not sustaining defendants' motion to suppress the evidence in reference to the two guns.
There is no need to discuss other assignments of error because unless the State is able to produce other evidence not shown in this record to support the information, then of course no verdict of guilty can be obtained. Since there is no showing that the State may not be able to produce competent evidence to sustain a conviction under the information in this case, *377 we think we should not reverse the case but reverse and remand it.
The judgment, therefore, is reversed and remanded.
All concur.