STATE of Missouri, Respondent,

v.

Raymond BOUNDS, Appellant.

No. 45625.

Supreme Court of Missouri,
Division No. 2.

Oct. 14, 1957.

Claude F. Cooper, Blytheville, Ark., Peal & Moeckel, Caruthersville, Bradley & Noble and John H. Bradley, Kennett, for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Sp. Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Upon a charge of murder in the first degree in killing Omer ("Poor Boy") Welch on September 5, 1955, the appellant, Raymond Bounds, has been found guilty of murder in the second degree and sentenced to twenty years' imprisonment.

It is first urged that the court erred in overruling the appellant's motion to quash the information for the reasons that it was not returnable to any term of the Circuit Court of Pemiscot County, was not verified by the official oath of the prosecuting attorney, and failed to charge the appellant with any offense, particularly with either first or second degree murder. The caption of the information recites "In the Circuit Court of Pemiscot County, Missouri, at the —— Term, 19—." However, the information is signed by "James A. Vickrey Prosecuting Attorney, Pemiscot County, Missouri." V.A.M.S. § 545.240; 42 V.A.M.S. Supreme Court Rules, rule 24.16. The prosecuting attorney verified the information before the clerk of the circuit court and it was filed on "November 2, 1955." Aside from the fact that venue need not be stated in the body of the information (V.A.M.S. § 545.160; Sup.Ct. Rule 24.11) and the information is deemed not to be invalid for this reason or for any other reason "which does not tend to the prejudice of the substantial rights of the defendant upon the merits" (V.A.M.S. § 545.030), the information could be filed "during term time, or with the clerk in vacation" (V.A.M.S. § 545.240) and it was triable "at the term at which the indictment is found or information filed, if the defendant is in custody or appears at such term, or at the first term at which the defendant appears, unless the same be continued for cause." V.A.M.S. § 545.780; Sup.Ct. Rule 25.01. The appellant appeared in the Circuit Court of Pemiscot County on January 11, 1956, in person and with counsel and after the disposition of certain preliminary motions and in response to the court's inquiry of whether the defendant should be arraigned his counsel announced, "The defendant waives arraignment, of course, with a plea of not guilty." In these circumstances there is no merit in

the objections that the information was not properly signed or verified or that it was not returnable to some particular term of court.

■■■■ Certainly, as the appellant argues, an information "should be reasonably understandable and make definite charges." Sup.Ct. Rule 24.01. It is not necessary to set this information out in full, its only obscurity inheres in the fact that it is drawn in the repetitious, circumlocutory, redundant language of all charges of murder. While the appellant's name is mentioned but once in a three hundred word sentence it definitely charges that he shot and killed Omer Welch with a shotgun, it charges that he did so "feloniously, on purpose and of his malice aforethought, wilfully, *deliberately* and premeditatedly." Omitting or ignoring the word "deliberately" the information appropriately charged murder in the second degree, the offense of which the appellant was convicted. V.A.M.S. §§ 559.010, 559.020; State v. Shriver, Mo., 275 S.W.2d 304. The information here does not charge that the deceased, "Poor Boy" Welch, assaulted or shot himself as was said to be the case in State v. Manning, 168 Mo. 418, 68 S.W. 341. The information here sets forth plainly enough the appellant's connection with the shooting and killing of the deceased and, as stated, appropriately charges him with murder in the second degree. State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245.

The appellant, Raymond Bounds, admittedly shot and killed Omer "Poor Boy" Welch. The background and circumstances were that Raymond's father, Americus Napoleon ("Mercus") Bounds, operated a liquor and general store in Gobler. A short distance from the store there was a concrete block building, vacant except for an old mattress, a wooden bench, some pieces of concrete blocks and empty beer cans and whiskey bottles. In the forenoon of September 5, 1955, Benny Neal Taylor and "Poor Boy" were in the building drinking; they had been drinking for some

time. Others, including Raymond and a friend or two, entered the building at intervals and had a drink. Finally a friend of Raymond's came along and there was a crap game in the building. The friend was the loser in the crap game in the sum of $45. Benny Taylor was the winner and as soon as the friend left the building Benny gave Raymond the winnings, $45. Raymond left the building and in a few minutes came back and gave Benny $5 and "Poor Boy" $5—he was "dividing up the winnings." Shortly Raymond and Benny had a rather inconclusive fight, due, Raymond says, to "a confusement over some meal tickets" with which they were concerned when they were working at Rochelle, Illinois. After Raymond and Benny stopped fighting "Poor Boy" protested Raymond's division of the spoils of the crap game, said he "didn't cut it up right." An argument ensued and finally a fight, "Poor Boy" striking the first blow with his fist. Raymond hit "Poor Boy" and either knocked him down or they fell wrestling. "Poor Boy" had a pop bottle in one hand but Benny did not think he used it—Raymond says he did. Anyway, while they were both on the ground fighting and wrestling "Mercus" came in and enlisted Benny's aid in separating them. Benny was pulling on Raymond and "Mercus" said, "turn him loose, he has got Raymond's nose in his mouth." Upon "Mercus'" command "Poor Boy" released Raymond's nose and he went to the store, he says for the purpose of washing the blood off, getting the keys to his father's car and going to the doctor.

■■■■ In a few minutes, perhaps five, Raymond returned to the store building with an automatic shotgun held at hip level. According to the state's evidence "Poor Boy" was then sitting on the wooden bench, Raymond "stuck" the barrel of the gun through the door, "He never did put it up to his shoulder. He put it up like that" and fired, the shot hitting "Poor Boy" in the face. Benny heard no argument or words between Raymond and "Poor Boy"

but another state's witness, from outside the building, said that "Poor Boy" said, "Don't do that, just give me a chance." In those briefly outlined circumstances the evidence supports and warrants the finding and conviction of murder in the second degree. State v. Crouch, Mo., 124 S.W.2d 1185; State v. Connor, Mo., 252 S.W. 713.

In circumstances quite similar to the facts of this case the Connor case held that there should have been an instruction on manslaughter, while the Crouch case held that the offense was either murder in the second degree or justifiable homicide by reason of self-defense, that the evidence did not "present an issue on manslaughter." [124 S.W.2d 1188.] In this case the court gave an instruction on manslaughter and so we are not confronted with that problem but we are concerned with self-defense, upon which the court also instructed the jury, and particularly are we confronted with the problem of whether in connection with self-defense the court should have given the jury an instruction upon the subject of threats.

The circumstances bearing upon this phase of the case are these: Raymond and his mother say that after he was in the store, to wash up and get the car keys, he heard "a commotion" outside and Raymond says, "Mama, they have got daddy pinned," and as she went to the door to look out Raymond took the shotgun from the counter and walked out. He says, "I heard a racket out there and I was bleeding and I was beat up too bad to fight any more and I taken the shotgun and went back out there, with no intention of killing anybody but to get my father out and make them men leave." "Mercus" says that "Poor Boy" shoved him against the wall and choked him during Raymond's absence. It could be noted that "Poor Boy" was a large man weighing about 215 pounds. As Raymond got to the door his father was "backing out" and "Poor Boy," according to Raymond, was standing to the left of the east door. Raymond says that he told them to get out and "Poor Boy" started towards the

west door but as he did so Benny grabbed his right arm. At that moment "Poor Boy" "grabbed up a three-cornered piece of concrete in his right hand, and he had a bottle in his left hand, and he started back towards me and said, 'I'll just finish him up.'" It was then that Raymond fired the shotgun "to keep him from knocking me in the head with that piece of concrete and possibly killing me."

In addition to "Poor Boy's" statement, "I'll just finish him up," another witness testified that "on Sunday before the killing happened" he heard "Poor Boy" say "there was going to be trouble around Bounds' and him and Raymond would have trouble." The witness promptly conveyed this information to Raymond. The same witness testified that two years previously, concerning Raymond's intervention in a fight between "Poor Boy" and Charlie Doris, he heard "Poor Boy" say "he would finally just get around to killing Raymond." Because of remoteness the court instructed the jury to disregard the latter threat. In this connection another bit of evidence may not be irrelevant, five witnesses testified that "Poor Boy's" reputation for peace and quietude was very bad indeed. In view of Raymond's version of the final encounter, "Poor Boy's" menacing advance, brandishing a pop bottle and a piece of concrete block after announcing that he would "just finish him off," the reputed threats were followed by an overt act or demonstration of immediate intention on the part of the deceased to execute the threats and, consequently, there was some evidence of self-defense and the evidence of threats was admissible upon the issues of who was the aggressor and the reasonableness of Raymond's apprehension of danger in the circumstances. 26 Am.Jur., Sec. 363, p. 406; State v. Sovern, 225 Mo. 580, 125 S.W. 769.

The court instructed the jury upon the subjects of murder in the first degree, murder in the second degree, manslaughter, and self-defense. The court refused to

give the appellant's proffered instruction upon the subject of threats, their effect, and the consideration the jury should give them. And, there was no instruction upon the subject of threats and no instruction mentioned or referred to threats. The state contends, however, that the proffered instruction was erroneous and therefore the court properly refused to give it. It is said that the subject of threats is not one of the "questions of law arising in the case which are necessary for their (the jury's) information in giving their verdict" (V.A.M.S. § 546.070) and, the appellant not having offered a correct instruction, the court was not bound to instruct the jury upon the subject at all. The instruction was copied from a well-known text and the text took the instruction from State v. Hicks, 92 Mo. 431, 4 S.W. 742, without considering that the court gave the instruction in the Hicks case and, of course, there was no question as to its correctness.

It is not necessary here to consider the instruction, it is assumed that it is incorrect, and it is not necessary to consider the state's arguments in detail, all these and other contentions were fully considered in State v. Finn, Mo., 243 S.W.2d 67, 72–74, and it was held in somewhat similar circumstances that the trial court had prejudicially erred in failing to instruct the jury upon the subject of threats even though the defendant's proffered instruction was erroneous. The opinion in that case carefully examines all the cases dealing with threats and their relationship to self-defense. By analogy, precedent, and reason the opinion considers the duty of the trial court in instructing the jury upon the subject of threats in connection with self-defense and it plainly decides that it was the duty of the court to give a correct instruction upon the subject even though the instruction offered by the defendant was erroneous. See also State v. Sovern, supra, although the proffered instruction in that case was deemed to be correct. Other cases on other subjects, unlawful arrest,

voluntary or involuntary confessions, the effect of evidence impeaching a witness, statements of the deceased, an intruder in one's place of business and alibi, in which it was held that it was the duty of the trial court to give correct instructions on the enumerated subjects even though the instructions offered by the defendants were erroneous are: State v. Burnett, 354 Mo. 45, 188 S.W.2d 51; State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88; State v. Warren, 326 Mo. 843, 33 S.W.2d 125; State v. Hendricks, 172 Mo. 654, 73 S.W. 194; State v. Reed, 154 Mo. 122, 55 S.W. 278 and State v. Bobbitt, 228 Mo. 252, 128 S.W. 953. This case is not to be confused with those in which the defendant did not offer an instruction upon the subject of threats or with those in which there was another instruction on some phase of the subject or, of course, with those in which there was no evidence of threats. State v. Westlake, 159 Mo. 669, 61 S.W. 243; State v. Fletcher, Mo., 190 S.W. 317; State v. Robinett, 312 Mo. 635, 281 S.W. 29; State v. Rozell, Mo., 279 S.W. 705; State v. Arnold, 206 Mo. 589, 105 S.W. 641; 41 C.J.S. Homicide § 382, p. 185. In short, for lack of a proper instruction upon the subject of threats the appellant is entitled to a new trial.

In view of this disposition of the appeal it is necessary to notice briefly only such other matters as may recur upon a retrial of the cause. In his opening statement and particularly in qualifying the jury panel a commendably zealous prosecuting attorney was not kept within reasonable bounds, especially considering the purpose and function of voir dire examinations and opening statements. State v. Pinkston, 336 Mo. 614, 79 S.W.2d 1046; State v. Mosier, Mo., 102 S.W.2d 620; State v. Richardson, 349 Mo. 1103, 163 S.W.2d 956; 24 C.J.S. Criminal Law § 1902, p. 896. Throughout the trial of the case the coroner's inquest was not mentioned except that the prosecuting attorney once threatened to use his tape recording of the evidence and so we have concluded in the particular circum-

**492**

stances that the trial court did not prejudicially err with respect to his handling of the matter (annotation 156 A.L.R. 345, 354), but there should be a caveat as to the manner in which the inquest was conducted and whether the defendant would be entitled to any part of the prosecuting attorney's tape recording in the event it should be employed against him. State v. Pearson, Mo., 270 S.W. 347; State v. Burnett, 357 Mo. 106, 206 S.W.2d 345; State v. Black, 360 Mo. 261, 227 S.W.2d 1006; State ex rel. Page v. Terte, 324 Mo. 925, 25 S.W.2d 459; State ex rel. Phelps v. McQueen, Mo., 296 S.W.2d 85.

Because of the error noted the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.