STATE of Missouri, Respondent,

v.

George Edward LIVERS, Appellant.

No. 47974.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Don C. Carter, Sturgeon, for appellant.

John M. Dalton, Atty. Gen., Robert T. Donnelly, Sp. Asst. Atty. Gen., for respond-. ent.

STORCKMAN, Judge.

The defendant was convicted of statutory rape and the jury assessed his punishment at imprisonment in the penitentiary for a term of two years. His motion for new trial not having been presented to the court and acted upon within ninety days after its filing was overruled by operation of law and the defendant was sentenced in accordance with the verdict of the jury. He appealed and has filed a brief in this court. The errors assigned relate to the giving and refusal of instructions and to the rulings of the trial court on objections to questions asked during the cross-examination of the defendant and his character witnesses.

The prosecuting witness, aged 13 at the time of the alleged offense on October 16, 1958, lived with her parents in Monroe City. The defendant, aged 23 at the time of the trial on July 8, 1959, was married and living with his parents about seven miles south of Monroe City when the offense was committed. The defendant had visited in the home of the parents of the prosecuting witness and she was acquainted with him. On the night in question, the girl's parents had gone to Hannibal and she was at home with her 2-year-old sister and her grandfather who was 95 years of age. The grandfather was bedridden at the time and died before the trial.

The prosecuting witness testified that the defendant came to her home between 9 and 10 o'clock on the night in question, while she was preparing her school lessons. He went to the kitchen and drank a can of beer which he had brought with him and a cup of coffee which she prepared for him. He then came into the living room and suggested that they turn off the lights and sit in the dark and talk awhile, but she refused and he left the home about 10:30. There was a bed and a cot in the living room of the home and after further study the prosecuting witness turned out the living room lights and lay. down on the bed. She awakened when she heard the kitchen light being turned off and "heard something zip" which she thought was her mother unzipping her dress. When she realized it was not her mother, she jumped up, called the defendant's name, turned on the lights and saw the defendant in the room. It was then about 11:25 p. m. The defendant sat down on a chair, talked awhile, then got up, stretched, and said that he guessed that he had better be going, but instead he grabbed the girl, threw her to the floor and lay on her left arm. She began hitting him with her right arm and kicked and screamed. He then put her right arm behind her back and his hand over her mouth. He threatened to knock her out cold but said that she wouldn't get hurt if she did what he told her to do. She then stood up and he pushed her over onto the bed and removed her blue jeans and underpants, took his trousers partially off and put his privates in hers. As he was leaving the defendant said that if she told anyone what had happened she wouldn't be able to tell anybody else. She put her clothes back on but later removed her underpants which had blood on them and put them in the washing machine. When she discovered that the defendant had left his cap and sunglasses in the room, she threw the cap onto the driveway in front of the house and put the sunglasses in the stove. Since the front door did not have a lock on it, the prosecuting witness braced a chair against the door and went to bed. When her family returned from Hannibal later that night, she told her old-

er teenage sister what had happened but did not tell her parents until the next day.

A physician examined the prosecuting witness on October 17 and found a laceration or tear in the posterior vaginal orifice which he described as recently inflicted and gave as his opinion that the female organ of the girl had been penetrated. On the same day the parents of the girl took her to a deputy sheriff of Monroe County to whom she stated that the defendant had attacked her. He was arrested on the same day. The cap and the remains of the sunglasses were identified as belonging to the defendant and were introduced in evidence.

The defense was an alibi. The defendant testified regarding his activities during the day and night of October 16. He said that during the early evening he had been drinking beer with companions. As to the time of the alleged attack, he testified that he went to a tavern in Monroe City about 11:00 p. m. and stayed there until it closed about 12:30; that he started home in his car but admitted that he was "pretty full" and ran off the road about a mile out of town; that he lay in his car until about 4 o'clock in the morning when he went to a hotel where he spent the rest of the night. He admitted that he knew the prosecuting witness and that he had been in her home many times but denied that he attacked her or that he was in the home on the night of October 16. Three witnesses testified they saw the defendant in taverns at various times during the evening and three other witnesses testified that the defendant's reputation as a law-abiding citizen was good prior to October 16, 1958. Other evidence and events of the trial will be referred to in the course of the opinion.

The first point the defendant relies on is that "the court erred in refusing to give defendant's Instruction No. 1, which informed the jury that the defendant did not have to prove an alibi beyond a reasonable doubt." The instruction is one of two offered by the defendant with respect to the defense of alibi. The other, Instruction No. 11, was given. Like Instruction No. 1, it instructs the jury, inter alia, that "the defendant is not required to prove such defense [the alibi], beyond a reasonable doubt, to entitle him to an acquittal". It is the same in all material respects as the instruction held to be reversibly erroneous in State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701, 706–709, because it tended to place on the defendant the burden of proving his defense of alibi in a case where the nature of the offense was such as to require the state as a part of its case to prove beyond a reasonable doubt that the defendant was present at the time and place the crime was committed. The only difference in the arrangement of the subject matter of Instruction No. 11 is that the sentence designated and referred to as (2) in the Hubbard opinion is moved up and used as a separate paragraph at the beginning of Instruction No. 11. Substantially the same instruction is fully set out and discussed in the Hubbard case.

Defendant's refused Instruction No. 1 is little if any improvement over given Instruction No. 11. It is subject to the same criticism the defendant now makes of the given instruction although perhaps in a lesser degree. It does not employ the phrase "if proved" in sentence (3) of the Hubbard case, but it does have the objectionable statement that the law "does not require the defendant to prove an alibi beyond a reasonable doubt." This is the same in substance as sentence (5) of the Hubbard instruction which the Hubbard case held had the effect of placing the burden of proof upon the defendant even if the phrase "if proved" did not. 171 S.W.2d loc. cit. 709, Column 2. But the defendant's refused Instruction No. 1 has other vices such as stating that the defense of alibi did not have to be proved by evidence having "the weight of moral certainty". We need not decide whether Instruction No. 1 was a proper one or which of the two was the least offensive. In effect what the trial court had was a Hobson's choice.

We cannot agree with the defendant's assertion that the giving of Instruction No. 1

would have made clear to the jury its duty on the alibi issue "especially as to the question of reasonable doubt." He has not demonstrated that the instruction would have had this effect given either by itself or in connection with Instruction No. 11. A short and unadorned instruction would have accomplished this purpose. The Hubbard opinion, 171 S.W.2d loc. cit. 707 [13], points out that a single sentence from the condemned instruction would have been sufficient to advise the jury that it should acquit the defendant unless it found and believed beyond a reasonable doubt that the defendant was present at the place of the alleged offense and was guilty of committing it.

The essence of defendant's contention on appeal is that "it is the duty of the trial court to prepare and give the jury a proper Instruction on" the issue of alibi. In support of this contention, he cites State v. Burnett, 354 Mo. 45, 188 S.W.2d 51, and State v. Bounds, Mo., 305 S.W.2d 487. These are cases in which the defendant's proffered instruction was refused and no instruction was given on the issue. By rule of court, by statute and case law, it is established that a defendant in a criminal case cannot complain on appeal of an error committed during the trial at his instance and this includes the giving of instructions requested by him. Supreme Court Rule 26.06, V.A.M.R.; § 545.030, subd. 1(16) RSMo 1949, V.A.M.S.; State v. Morris, Mo., 307 S.W.2d 667, 674–675 [9]; Myers v. Buchanan, Mo., 333 S.W.2d 18, 23 [5]. The court did instruct on the defense of alibi and if it did so erroneously the error was invited. The defendant cannot now predicate error on an instruction declaring a theory of law which he himself adopted and induced the court to give. The assignment of error is denied.

Instruction No. 5, given at the state's request, deals with the presumption of innocence and reasonable doubt. Practically identical instructions, or parts thereof, have been held not to constitute reversible error in State v. Wissing, 187 Mo. 96, 85

S.W. 557, 559 (second paragraph of the "Third" instruction), State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 232 [12], State v. Abbott, Mo., 245 S.W.2d 876, 880 [7], and State v. Cheatham, Mo., 340 S.W.2d 16 (No. 47,921). Nevertheless, the defendant makes the general complaint that Instruction No. 5 "as to reasonable doubt * * * is not explicit enough as to defendant's rights" and that "the Court should have also given defendant's Instruction No. 3, so the jury would be more fully enlightened as to the defendant's rights." This statement is insufficient as a point relied on to present anything for review because it fails to state "briefly and concisely * * * why it is contended the Court was wrong" in giving Instruction No. 5. Supreme Court Rules 83.05(e) and 28.18; Wilcox v. Swenson, Mo., 324 S.W.2d 664, 672 [11]; Haley v. Edwards, Mo., 276 S.W.2d 153, 162 [15]. Three cases cited under the point relied on but not further discussed or referred to do not assist the defendant in any respect. This is not a proper case to determine if there is anything wrong with an instruction such as No. 5.

The defendant also urges under this point that the court should also have given Instruction No. 3 requested by the defendant. Instruction No. 3 is pregnant with jury argument relating to the presumption of innocence and also touches on reasonable doubt, but we need not determine if it is a proper instruction. Since Instruction No. 5 is not properly challenged and thus stands unimpeached, it was not erroneous for the court to refuse to give another instruction upon the same subject matter. State v. Peterson, Mo., 130 S.W.2d 505, 506 [7]; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 232 [13]; State v. Bradley, 361 Mo. 267, 234 S.W.2d 556, 561 [16, 17]. The assignment of error is denied.

The defendant next contends that the court erred in permitting the prosecuting attorney to inquire of the defendant "if he had been convicted of a crime since Oct. 16, 1958", the date of the alleged offense. The

complaint is based on this episode which occurred during the defendant's cross-examination:

"Q. Now, Mr. Livers, I will ask you whether or not you have ever been convicted of a crime?

"Mr. Carter: We object to that, if the Court please.

"The Court: Objection sustained.

"Q. Were you convicted on the—

"Mr. Carter: Now, we are objecting to that, if the Court please.

"Mr. Mitchell: He is subject to impeachment, your Honor.

"The Court: Yes, I know, but the objection to that question is sustained.

"Note [by Court Reporter]: At this time there was a conference at the Court's bench, among counsel and the court, without the reporter, and out of the hearing of the jury.

"Mr. Reinhard: I think that is all."

It should be noted that we do not decide whether the trial court ruled correctly in not permitting the state to prove a prior conviction for the purpose of affecting the defendant's *credibility*. That question is not briefed or presented by either party, but see § 491.050, RSMo 1949, V.A.M.S., and Fisher v. Gunn, Mo., 270 S.W.2d 869, 876 [8 & 9]. Nor are we concerned with the propriety of the court's limiting certain inquiries to the period before October 16, 1958, when the state cross-examined character witnesses who testified with regard to defendant's reputation, prior to that date, as "a law abiding citizen". This question likewise does not arise on the appeal as will later appear.

■ In his written argument the defendant undertakes to inform us that the matter referred to in the above excerpt from the transcript which was discussed by the attorneys and the court at the bench out of the hearing of the jury and not taken down by the court reporter concerned the defendant's conviction of careless and reckless driving in May 1959, that the prosecuting attorney had reference to this conviction when he interrogated the defendant, that the court sustained the objection because the state was trying to show an offense that was committed subsequent to October 16, 1958, and that the state had subpoenaed into court the records showing this conviction. Since none of this appears in the transcript of the trial proceedings, it cannot be considered in connection with the assignment of error on appeal. State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 339 [2].

The defendant's objection to the question asked during his cross-examination was sustained; he obtained from the court all that he requested and it has not been demonstrated that he was entitled to anything more. State v. White, Mo.App., 313 S.W.2d 47, 54 [10].

■ The defendant further seeks to bolster this assignment by the fact ·that on cross-examination one of defendant's character witnesses was asked by the prosecuting attorney if he had heard about the defendant being charged and convicted of careless and reckless driving. On objection the question was limited to the time before October 16, 1958, and the objection was overruled. The defendant's further request that the prosecuting attorney be reprimanded and that the jury be discharged because of "that improper question" was denied. The question was not answered and after the prosecuting attorney indicated he had no further questions to ask the witness the defendant renewed his motion to discharge the jury which was again denied. The record shows that the defendant suffered no disadvantage in the exchange during the colloquy in the presence of the jury with regard to these motions and requests. The cross-examination of the defendant's character witness on this subject matter is not sufficient to constitute prejudicial error either when considered alone or in connection with the defendant's cross-examination

in the same respect. State v. Carroll, Mo., 188 S.W.2d 22, 23 [1]; State v. White, Mo.App., 313 S.W.2d 47, 55 [3].

■ The final complaint is that the court erred in permitting the prosecuting attorney to make improper inquiries of defendant's character witnesses with reference to the defendant's conduct. One of the character witnesses was asked if she was aware that the defendant had been an excessive drinker, but the court sustained the defendant's objection and the question was not answered. Another was asked if he had heard that the defendant had passed some bad checks and upon being permitted to answer the witness stated that he didn't think that he had heard anything about the defendant writing any bad checks. A witness to a defendant's reputation for good character may be cross-examined as to the fact of prior arrests or accusations of misconduct for the purpose of testing the trustworthiness, knowledge and good faith of the witness. State v. Carroll, supra; State v. White, supra. See also State v. Kain, Mo., 330 S.W.2d 842, 845–846. It does not appear that the rule was violated in this instance. We have examined all of the assignments of error and find them to be without merit.

In addition to the questions presented in defendant's brief, we have examined the matters designated by Supreme Court Rule 28.02 as subject to review without assignment of error and find them to be legally sufficient.

The judgment is affirmed.

All concur.